EL PUEBLO DE PUERTO RICO, recurrido, *v.* JORGE LUIS FIGUEROA GARRIGA, acusado y peticionario.

*Número:* CE-94-917          *Resuelto:* 8 de marzo de 1996

*Pedro Delgado Hernández, Procurador General*, abogado del Pueblo; *Melba D. Ayala Ortiz*, abogada del peticionario.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El Ministerio Fiscal radicó, contra Jorge Luis Figueroa Garriga, un pliego acusatorio ante el entonces Tribunal Superior de Puerto Rico, Sala de Ponce, mediante el cual le imputó a éste la supuesta comisión de un delito de escalamiento en primer grado.[1] Llamado el caso para juicio en su fondo, las partes le informaron al tribunal de instancia que habían llegado a una "alegación pre acordada", conforme la cual el imputado mencionado estaba en disposición de hacer una alegación de culpabilidad por el delito grave de "recibo de bienes hurtados", esto es, una infracción al Art. 168 del Código Penal de Puerto Rico.[2] Las partes le recomendaron al tribunal una sentencia de tres (3) años de presidio, a ser cumplida la misma bajo el régimen de la Ley de Sentencia Suspendida. Aceptada por el tribunal de instancia la referida alegación preacordada, y hecha por el imputado de delito la alegación de culpabilidad pactada, éste fue referido a la oficina de oficiales probatorios para la realización de la correspondiente investigación e informe al tribunal de instancia.

Llegado el día señalado para la imposición de la sentencia, y conforme ello surge de la "minuta" que recoge los procedimientos acaecidos en dicho día, el foro de instancia sentenció al acusado a cumplir, *en probatoria*, una sentencia de tres (3) años de presidio. Como parte de las "condi-

---

[1] 33 L.P.R.A. sec. 4276.

[2] 33 L.P.R.A. sec. 4274.

ciones especiales" de la sentencia suspendida que le fuera concedida, al referido imputado se le impuso la obligación de ingresar, con el propósito de recibir tratamiento para su adicción a las drogas, en el Centro Cristiano Jehová Nissi durante un período mínimo de dos (2) años, transcurrido el cual, si dicho Centro certificaba su "liberación" de la adicción, el imputado podría retornar a la libre comunidad durante el último, y tercer, año de la sentencia.

Procede que se enfatice el hecho de que, estando el imputado todavía confinado en una institución penal el día en que se dictó la antes señalada sentencia, el tribunal de instancia dispuso que, el día que fuera éste *excarcelado* de la institución penal, "[u]n representante del Centro Cristiano Jehová Nissi recogerá a dicho convicto en la Institución Penal y lo llevará a dicho Centro". Apéndice, *Exhibit* II, pág. 2.

A esos fines, el 24 de mayo de 1994, la Administración de Corrección, en cumplimiento de la sentencia impuesta por el foro de instancia, *emitió un "certificado de libertad", o excarcelación*, con el propósito de que el imputado fuera puesto en libertad para ser llevado por el representante del antes mencionado Centro al mismo. Durante el transcurso del viaje, de la institución penal de donde había sido excarcelado al Centro Jehová Nissi en compañía del representante del mismo, el imputado de delito abandonó el vehículo en el cual era transportado, siendo detenido poco tiempo después por agentes de la Policía de Puerto Rico.

En vista de los hechos anteriormente reseñados, el Ministerio Fiscal no sólo procedió a radicar ante el tribunal de instancia la correspondiente moción en solicitud de revocación de la sentencia suspendida que le había sido concedida al convicto-probando sino que procedió a radicar una denuncia contra éste por el delito de "fuga", esto es, una infracción al Art. 232 del Código Penal de Puerto

Rico.(³) Celebrada la vista preliminar en cuanto al delito de fuga imputado, y habiéndose determinado causa probable para acusar en la misma, el Ministerio Fiscal radicó ante el mencionado foro de instancia el correspondiente pliego acusatorio por el delito de "fuga".

La representación legal del imputado procedió, entonces, a radicar ante el foro de instancia una moción al amparo de las disposiciones de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, sosteniendo en la misma que no se había determinado causa probable, a nivel de vista preliminar, con arreglo a la ley y a derecho. Alegó la defensa en dicha moción, en síntesis y en lo pertinente, que ello era así por cuanto los hechos a los que hemos hecho referencia *no* configuraban *ni* constituían un delito de fuga por cuanto, al momento de abandonar el auto en que era transportado, el imputado *ni* estaba en "detención preventiva", *ni* en "reclusión", *ni* estaba sometido a una "medida de seguridad de internación". Conforme la posición de la defensa, a su representado únicamente podía imputársele una violación a una de las condiciones especiales de la sentencia suspendida que le había sido concedida; esto es, que a lo sumo lo procedente en derecho lo era la revocación de la probatoria concedídale al imputado.(⁴)

Habiéndose opuesto el Ministerio Público a dicha moción desestimatoria, el tribunal de instancia *denegó* la misma. En la resolución que, a esos efectos, emitiera el foro de instancia, el mismo expresó, en síntesis y en lo pertinente, que el imputado efectivamente había incurrido en hecho constitutivo del delito de fuga por cuanto, al momento de abandonar el vehículo en que era transportado, el imputado "estaba sometido a una 'medida de reclusión'".

---

(³) 33 L.P.R.A. sec. 4428.

(⁴) Procede que se señale el hecho de que la sentencia suspendida de tres (3) años que le fuera concedida al imputado en el caso de "recibo de bienes hurtados" *efectivamente* le fue revocada a éste por el tribunal de instancia.

Inconforme, acudió Jorge Luis Figueroa Garriga, vía *certiorari*, ante este Tribunal en revisión de la referida resolución, imputándole al foro de instancia haber errado:

> ...AL NEGARSE A DESESTIMAR UN PLIEGO ACUSATORIO POR EL DELITO DE FUGA, BAJO LA REGLA 64(P) DE PROCEDIMIENTO CRIMINAL, POR EL FUNDAMENTO DE QUE EL PETICIONARIO ESTABA SOMETIDO LEGALMENTE A RECLUSIÓN PARA FINES DEL ESTATUTO DE FUGA, AUN CUANDO DICHO PETICIONARIO SE ENCONTRABA DISFRUTANDO DEL PRIVILEGIO DE UNA SENTENCIA SUSPENDIDA. EN VIRTUD DEL PRINCIPIO DE LEGALIDAD, AL NO CONFIGURARSE LOS ELEMENTOS DEL DELITO DE FUGA Y AL NO ESTAR TIPIFICADA LA CONDUCTA IMPUTADA, PROCEDÍA LA DESESTIMACIÓN DE DICHO PLIEGO ACUSATORIO. Petición de *certiorari*, pág. 4.

Expedimos el auto de *certiorari* radicado. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo. *Procede revocar la resolución recurrida*; veamos por qué.

## I

■ Establece el Art. 8 del vigente Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3031, que:

> *No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito*, ni se impondrán penas o medidas de seguridad que la ley no hubiere previamente establecido.
> *No se podrán crear por analogía delitos*, penas, ni medidas de seguridad. (Énfasis suplido.)

■ Por otro lado, el Art. 9 del referido Código Penal, 33 L.P.R.A. sec. 3041, establece que:

> Delito es un acto cometido u omitido *en violación de alguna ley que lo prohíbe u ordena*, aparejando, al ser probado, alguna pena o medida de seguridad. (Énfasis suplido.)

■ Como podemos notar, en estas dos (2) disposiciones legales —*en especial, el transcrito artículo 8*— queda consagrado el precepto o "principio de legalidad" en nuestra jurisdicción; el cual le garantiza a los ciudadanos de este País que no serán penalmente castigados sino por hechos que la ley, *de antemano*, ha definido o establecido como delito y, en adición, que en caso de ser convictos por la comisión de un delito, no podrán ser sancionados sino con las penas o medidas de seguridad previamente establecidas para los hechos delictivos por los que resultaron convictos. Es por ello que los tribunales *no* poseen autoridad para considerar como constitutivos de delito hechos distintos a los consignados en la ley, *ni* imponer sanciones no previstas en la misma. *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256, 260 (1983).

Ahí, precisamente, se encuentra el *obstáculo insalvable* al que se confronta la acción del Ministerio Fiscal al acusar del delito de "fuga" al peticionario Figueroa Garriga en relación con los hechos específicos del presente caso.

■ Para la fecha de los hechos, alegadamente delictivos, que se le imputan al peticionario del epígrafe,([5]) establecía el citado Art. 232 del Código Penal, 33 L.P.R.A. sec. 4428, que:

> Toda persona sometida legalmente *a detención preventiva, a reclusión o medida de seguridad de internación*, que se fugare será sancionada conforme a las siguientes penas:
> (a) Si estuviere en detención preventiva será sancionada con pena de reclusión que no excederá de seis meses.
> (b) Si estuviere cumpliendo sentencia firme o en trámite de apelación por un delito menos grave, será sancionada con pena de reclusión que no excederá de seis meses.

---

([5]) El citado Art. 232 del Código Penal fue enmendado —mediante la Ley Núm. 7 de 12 de enero de 1995— para *adicionarle dos (2) nuevos incisos*. Conforme a la enmienda realizada, ahora adicionalmente comete el delito de fuga aquella persona que se evade mientras está sometido a tratamiento y rehabilitación *"en un programa de desvío"*, bajo la Regla 247.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, *o bajo el Art. 404(b) de la Ley de Sustancias Controladas de Puerto Rico*, 24 L.P.R.A. sec. 2404.

(c) Si estuviere cumpliendo sentencia firme o en trámite de apelación por un delito grave, será sancionada con pena de reclusión por un término fijo de seis (6) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cuatro (4) años.

Esta pena será en adición a la sentencia que se le impusiere por el otro delito o a la que estuviere cumpliendo, según fuere el caso[.] Disponiéndose que no será concurrentemente con ninguna otra. (Énfasis suplido.)

Una somera lectura de la transcrita disposición legal es todo lo que se necesita para poder uno percatarse del hecho que la misma contemplaba únicamente tres (3) situaciones en las cuales una persona podía cometer el delito de fuga, a saber: mientras estaba sometida legalmente: (1) a "detención preventiva", (2) a "reclusión", y (3) a "medida de seguridad de internación".

A la luz de los *hechos particulares* del presente caso podemos descartar, de entrada, las situaciones referentes a "detención preventiva" y a la "medida de seguridad de internación". Como es sabido, la "detención preventiva" se refiere al período prejuicio; esto es, al período de tiempo en el cual el acusado se encuentra, por razón de no haber podido prestar la fianza impuesta, "sumariado" en espera de que se le celebre el correspondiente proceso criminal. *Por otro lado*, las "medidas de seguridad de internación" se refieren a los casos de los delincuentes habituales, compulsivos, sexuales peligrosos, incapacidad mental, etc. Véase D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, San Juan, Ed. Rev. C. Abo. P.R., 1986, pág. 391.

Consciente de, y conforme con, lo anteriormente expresado, el Procurador General de Puerto Rico expresa, en lo pertinente, que:

La *posición del Pueblo* es que la conducta imputada al peticionario está incluida en la figura delictiva de fuga —Artículo 232 del Código Penal— *en la modalidad de persona sometida legalmente a reclusión que evade la custodia del Estado*. Ya el

peticionario había sido *sentenciado* a término de reclusión de tres años, aunque con el beneficio de una sentencia suspendida sujeta a condiciones, incluyendo el tratamiento en el Centro Cristiano. La conducta del peticionario *constituye una evasión a la sentencia de reclusión,* aunque hubiera sentencia suspendida.([6]) (Énfasis suplido.)

■ *No* le asiste la razón. En primer lugar, no podemos perder de vista la definición que nos brinda el propio Código Penal de lo que es "la pena de reclusión". Establece el Art. 40 del referido Código, 33 L.P.R.A. sec. 3202, que:

La pena de reclusión consiste en *la privación de la libertad en la institución adecuada* durante el tiempo señalado en la sentencia. (Énfasis suplido.)

La "institución" a la que se refiere la citada disposición legal es, obviamente, una institución carcelaria o penal de la Administración de Corrección de Puerto Rico y, ciertamente, *no* a una de las localidades en las que opera, y lleva a cabo su trabajo de rehabilitación, el Centro Cristiano Jehová Nissi o los Hogares Crea, etc.

■ Por otro lado, hemos resuelto que la *esencia* del delito de fuga lo constituye la evasión o fuga, por parte de la persona, *de la "custodia legal" a la cual éste estaba sometido.* Véase *Rivera v. Delgado,* 82 D.P.R. 692, 695 (1961). Como hemos visto, el peticionario Figueroa Garriga *no* estaba bajo "custodia legal" al momento de abandonar el vehículo en el cual estaba siendo transportado al referido Centro Cristiano Jehová Nissi.([7]) De hecho, había sido *excarcelado* de la institución penal en la cual se encontraba recluido y entregado a unos funcionarios de dicho Centro, esto es, a una persona o ciudadano privado que laboraba

---

([6]) Informe del Procurador General, pág. 10.

([7]) Distinta es la situación, a manera de ejemplo, en que un confinado se evade mientras está siendo transportado de la institución penal en que extingue su sentencia a un tribunal, para el acto de juicio, o a un hospital, para recibir tratamiento, etc. En estas situaciones, el confinado al así actuar comete el delito de fuga por razón de encontrarse bajo "custodia legal" al momento de evadirse.

para el mismo. La decisión de concederle a un convicto de delito los beneficios de una probatoria, al amparo de las disposiciones de la Ley de Sentencia Suspendida,[8] significa, *por definición*, la concesión a esta persona del privilegio de poder cumplir la sentencia que le fuera impuesta fuera de una institución carcelaria, o en la libre comunidad, sujeto ello a las condiciones que tenga a bien imponer el tribunal sentenciador. *Pueblo v. Ortega Santiago*, 125 D.P.R. 203 (1990); *Pueblo v. Vega Vélez*, 125 D.P.R. 188 (1990); *Pueblo v. Ortiz Martínez*, 123 D.P.R. 820 (1989); *Vázquez v. Caraballo*, 114 D.P.R. 272 (1983).

En resumen, *no* estando el peticionario Figueroa Garriga —al momento de abandonar el vehículo de motor en el que era transportado al Centro Cristiano Jehová Nissini— en "detención preventiva", *ni* sometido legalmente a "reclusión", *ni* sujeto a "medida de seguridad de internación", éste *no* cometió el delito de fuga, esto es, *no* infringió las disposiciones del citado Art. 232 del Código Penal de Puerto Rico. Éste sí incurrió en una violación de una de las condiciones especiales de la sentencia suspendida que le había sido concedida, la cual violación constituye suficiente razón para que le sea revocada la misma.

Como podemos notar, la conducta en que incurrió el peticionario Figueroa Garriga no queda impune; la misma conlleva o acarrea *consecuencias serias* para él; esto es, la revocación de la probatoria y su reclusión en una institución penal por el período de años impuestos en la sentencia dictada. La Asamblea Legislativa —al enmendar el citado Art. 232 del Código Penal en 1955 con el propósito de "definir", adicionalmente, como fuga aquellas situaciones en que una persona se evade mientras está sometida a tratamiento o rehabilitación "en un programa de desvío o bajo el Artículo 404(b) de la Ley de Sustancias Controladas", *si-*

---

[8] Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. secs. 1026–1029.

*tuaciones en que no se ha dictado sentencia*— pudo haber incluido la situación hoy ante nuestra consideración. *No* lo hizo; obviamente entendió que era suficiente castigo la revocación de la sentencia suspendida. Este Tribunal *no* puede hacer delictiva, por fíat judicial, dicha situación. El principio de legalidad lo impide.

Siendo ello así, la determinación de causa probable que se hiciera contra el peticionario del epígrafe, a nivel de vista preliminar, no fue hecha conforme a la ley y al derecho; razón por la cual procede decretar la desestimación del pliego acusatorio que, por el delito de fuga, contra él se radicara ante el foro de instancia; ello por imperativo del principio de legalidad.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Hernández Denton emitió una opinión de conformidad. El Juez Asociado Señor Negrón García emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Fuster Berlingeri.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Hernández Denton.

Estamos conformes con la opinión del Tribunal. A la luz del principio de legalidad, la decisión interpreta correctamente el Art. 232 del Código Penal, 33 L.P.R.A. sec. 4428, al concluir que el señor Figueroa Garrido no cometió el delito de fuga cuando, después de su excarcelación, evadió la custodia del empleado que lo conducía al Centro Cristiano Jehová Nissi para recibir tratamiento contra su adicción. De lo contrario, por fíat judicial enmendaríamos el Código Penal para considerar como elementos constitutivos del delito de fuga unos hechos que no fueron originalmente cubiertos por el estatuto.

## I

Al adjudicar la controversia de autos recordemos que el principio de legalidad prohíbe al Estado instar una acción penal por hechos que no hayan sido expresamente declarados como punibles por la ley. El Art. 8 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3044, incorpora esta protección en nuestro Derecho Penal. Entre otras garantías, el principio de legalidad impone un cierto grado de precisión de la ley penal y prohíbe la interpretación analógica, en cuanto perjudique al acusado (analogía *in malam partem*). Véase S. Mir Puig, *Derecho Penal: Parte General* 95 (1995). En cuanto a lo que el principio exige al legislador, expresa Bacigalupo:

> Las exigencias referentes al Parlamento tienen por objeto reducir al máximo razonable la posibilidad de decisión personal de los tribunales en la configuración concreta del hecho que se prohíbe. (Énfasis suprimido.) E. Bacigalupo, *Manual de Derecho Penal*, Bogotá, Ed. Temis, 1989, pág. 34.

Por virtud de este principio, el ámbito exegético del juez al interpretar la ley penal se encuentra limitado por la interpretación restrictiva y por el sentido literal del texto legal. Hemos reiterado que "los estatutos penales deben interpretarse restrictivamente en cuanto a lo que desfavorezca al acusado, y liberalmente en cuanto a lo que lo favorezca". *Pueblo v. Sierra Rodríguez*, 137 D.P.R. 903, 908 (1995). Véanse: *Pueblo v. Arandes de Celis*, 120 D.P.R. 530, 538 (1988); *Mari Bras v. Alcaide*, 100 D.P.R. 506, 516 (1972).

Con el principio de legalidad presente, nos enfrentamos a la controversia de este caso: si según el Art. 232 del Código Penal, *supra*, el imputado Figueroa Garriga era una persona *sometida legalmente a reclusión* al momento en que evadió la custodia del empleado que le conducía al Centro Cristiano Jehová Nissi.

Para que se configure el delito de fuga, ante los hechos

de este caso, tendríamos que concluir que Figueroa Garriga, mientras disfrutaba del privilegio de libertad a prueba, en efecto se encontraba "en reclusión", en vista de que una condición para el disfrute de dicho beneficio era ingresar al centro de tratamiento. No podemos suscribir tal conclusión.

Por definición, la sentencia suspendida tiene como propósito que la persona sentenciada *quede en libertad* a prueba. 34 L.P.R.A. sec. 1027. Este privilegio se concede discrecionalmente y sólo en aquellos casos cuando el legislador ha expresado que existe una justificación para evitar que el convicto sea encarcelado en una institución penal. *Pueblo v. Pacheco Torres*, 128 D.P.R. 586 (1991). Sobre dicho mecanismo hemos expresado:

> La concesión de una sentencia suspendida a un convicto de delito "evita los efectos negativos en el individuo que la reclusión frecuentemente produce, minimiza el impacto de la reclusión sobre los dependientes y familiares del convicto, preserva la libertad del delincuente sin sacrificar el interés social en la prevención y corrección del crimen, y promueve afirmativamente la rehabilitación del delincuente al permitirle mantener contactos sociales normales pero condicionados en la comunidad. *Pueblo v. Vega Vélez*, 125 D.P.R. 188, 195 (1990).

Una vez se concede la sentencia suspendida, por definición, el reo no se halla "recluido", por el contrario logra su libertad, aunque esté limitada por las condiciones fijadas. Dicho privilegio se fundamenta precisamente en la confianza del Estado en que no es necesario que el probando sea recluido en una institución penal. Por ello, como requisito para su concesión, la ley exige que el juez sentenciador tenga ante sí un informe rendido por el Administrador de Corrección "después de este último haber practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona sentenciada, y que, del contenido de ese informe, pueda dicho juez sentenciador concluir que *ningún aspecto de la vida de esa persona evidencia la necesidad de que se le recluya en alguna de las*

*instituciones penales de Puerto Rico*". (Énfasis suplido.) 34 L.P.R.A. sec. 1027(3).

Aunque las condiciones de la sentencia suspendida impongan una restricción a la libertad, su propósito no es la reclusión en sí. En el caso de autos, el propósito de que Figueroa Garriga ingresara al Centro Cristiano era únicamente procurar su rehabilitación. Precisamente por eso fue excarcelado de la institución penal y entregado a unos funcionarios del Centro Cristiano Jehová Nissi para que comenzara su tratamiento de rehabilitación.

A la luz del lenguaje de la Ley de Sentencia Suspendida, debe entenderse que dichas restricciones (condiciones) no caen bajo el concepto "reclusión", según es utilizado en el Código Penal. Por esa razón la opinión mayoritaria con gran acierto afirma que "[l]a decisión de concederle a un convicto de delito los beneficios de una probatoria, al amparo de las disposiciones de la Ley de Sentencia Suspendida, significa, *por definición*, la concesión a esta persona del privilegio de poder cumplir la sentencia que le fuera impuesta fuera de una institución carcelaria, o en la libre comunidad, sujeto ello a las condiciones que tenga a bien imponer el tribunal sentenciador". (Énfasis en el original y escolio omitido.) Opinión mayoritaria, pág. 234. Otra interpretación implicaría la creación de un delito por analogía, esto en violación del principio de legalidad.

Debe recordarse que el tribunal sentenciador puede revocar la libertad a prueba del convicto "en cualquier momento en que a su juicio la libertad a prueba ... fuere incompatible con la debida seguridad de la comunidad o con el propósito de rehabilitación del delincuente", y recluirlo por el término total impuesto en la sentencia. 34 L.P.R.A. sec. 1029. Es claro que el período que transcurre el· convicto en probatoria, aunque se halle internado en un centro de rehabilitación, no es equivalente a la reclusión en una institución penal, ya que de revocarse la probatoria, el tiempo transcurrido no se le acredita como tiempo cum-

plido en reclusión. Al revocar, el tribunal sentenciador puede ordenar la reclusión del probando por el tiempo completo original de la sentencia o su remanente. *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985).

En el caso de autos, tampoco estamos ante la imposición de una pena de reclusión como condición previa de la concesión de una sentencia suspendida. En tales casos, se recluye al convicto en una institución penal durante parte del término total de la sentencia impuesta. *Pueblo v. Vega Vélez*, supra. Al cumplir la condición previa de reclusión y concedida la sentencia suspendida, el convicto queda excarcelado en libertad a prueba. En *Vega Vélez* aclaramos que en aquellos casos cuando el probando sea recluido como condición de la sentencia suspendida, hasta tanto se legisle, dicha reclusión *no podrá exceder del término de un año*. Íd., pág. 203.

En el caso de epígrafe, el foro de instancia sentenció al acusado a tres (3) años de presidio que serían cumplidos en probatoria. Como condición, el imputado debía ingresar al Centro Cristiano Jehová Nissi para recibir tratamiento contra su adicción a drogas por un período mínimo de dos (2) años. Transcurridos los dos (2) años, si el Centro certificaba su "liberación" de la adicción, el imputado era libre para retornar a la libre comunidad durante el tercer año de su sentencia. Resulta claro que los dos (2) años en el Centro no eran un término de reclusión previa, como condición a la concesión de la probatoria. El ingreso al Centro, en el contexto de los hechos, era una condición que debía cumplirse *durante la libertad a prueba* que ya se había concedido y por lo cual había sido excarcelado de la institución penal donde estaba recluido. Aunque los actos de Figueroa Garriga conllevan la revocación de la libertad a prueba, no procede la imposición de sanciones penales por unos hechos que no estaban previstos en el delito de fuga.

Del lenguaje y los propósitos de la Ley de Sentencia Suspendida surge con claridad que mientras se disfruta de

libertad a prueba, el incumplimiento de las condiciones restrictivas de la libertad no configura el delito de fuga.[1] Por virtud del principio de legalidad, en los casos de incumplimiento de las condiciones de la probatoria debe concluirse que actualmente en nuestro orden penal existe una atipicidad.

Como correctamente concluye la opinión del Tribunal, la consecuencia punitiva en dichos casos de incumplimiento se limita a la revocación del privilegio de libertad a prueba y no a la acusación por el delito de fuga. Cualquier otra interpretación sería contraria al principio de legalidad.

— o —

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Fuster Berlingeri.

I

La interpretación judicial tiene, por naturaleza, una evolución ínsita para cada una de las distintas épocas. B.J. Cardozo, *La naturaleza de la función judicial*, Buenos Aires, Ed. Arayú, 1955, págs. 62–65.

Según esta perspectiva, al examinar el ámbito del *delito de fuga* no podemos adjudicarle a las palabras "sometida legalmente y reclusión" un significado inusual, extraordinario o raro que conlleve un enfoque restrictivo distinto del visualizado por la Asamblea Legislativa.

En esencia, la tesis mayoritaria descansa en la premisa de que el convicto Jorge L. Figueroa Garriga "no estaba

---

[1] Otros modelos penales excluyen expresamente la evasión en casos de probatoria como modalidad del delito de fuga. El *Model Penal Code*, por ejemplo, establece que el delito de fuga se comete al evadirse ilegalmente de *official detention. American Law Institute, Model Penal Code and Comentaries* Parte II, Sec. 242.6 (1980). Este mismo artículo aclara que "official detention does not include supervision of probation or parole, or constrain incidental to release on bail". Íd.

bajo 'custodia legal' al momento de abandonar el vehículo" en que era trasladado de una institución penal al Centro Cristiano Jehová Nissi para tratamiento contra su adicción a drogas y, por ende, no cometió el delito de fuga tipificado en el Art. 232 del Código Penal, 33 L.P.R.A. sec. 4428. No podemos suscribir tal tesis.

## II

De entrada, en materia de interpretación penal la regla dorada nos la suministra el Art. 6 de dicho cuerpo, al señalar que las "palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente". 33 L.P.R.A. sec. 3021. El Art. 232 del Código Penal, vigente al momento de la fuga de Figueroa Garriga, disponía, en lo pertinente, que "[t]oda persona sometida legalmente a detención preventiva, a reclusión o medida de seguridad de internación, que se fugare será sancionada conforme a las siguientes penas". (Énfasis suplido.) 33 L.P.R.A. sec. 4428.

En ocasión de interpretar el artículo antecesor, Art. 152 del Código Penal, 33 L.P.R.A. sec. 509, habíamos resuelto que "[c]omete pues el delito de fuga la persona que se escapa de un *sitio*, como una cárcel, donde se encuentra bajo custodia legal. *La fuga de la custodia legal m[á]s bien que de un sitio de confinamiento, es lo que constituye la esencia del delito*". (Énfasis suplido.) *Rivera v. Delgado*, 82 D.P.R. 692, 695 (1961).

Con razón se ha dicho que "[e]l objeto jurídico de protección tutelar en este artículo es el respeto que se merece el Estado cuando impone límites a la libertad de sus ciudadanos por razón de haber resultado convictos". D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, San Juan, Ed. Inst. Desarrollo del Derecho, 1993, pág. 366.

De otra parte, el Art. 40 del mismo Código Penal reconoce que "[l]a pena de *reclusión* consiste en la *privación de*

*la libertad en la institución adecuada*". (Énfasis suplido.) 33 L.P.R.A. sec. 3202. El elemento característico de dicha pena, en comparación con otras, es que conlleva una "restricción de la libertad física". Nevares-Muñiz, *op. cit.*, pág. 67.

En recta hermenéutica, toda interpretación debe validar el propósito que tuvo el Legislador —*Rivera Maldonado v. Autoridad sobre Hogares*, 87 D.P.R. 453, 456 (1963)— y evitar una interpretación libérrima que conduzca a resultados absurdos. *Pacheco v. Vargas, Alcaide* 120 D.P.R. 404, 409 (1988). Aunque los estatutos penales deben interpretarse restrictivamente, ello " 'no exige que a las palabras de un estatuto deba dárseles un significado más limitado o que deba hacerse caso omiso de la evidente intención del legislador' ". *Pacheco v. Vargas, Alcaide*, supra, pág. 410, citando con aprobación a *Pueblo v. Mantilla*, 71 D.P.R. 36, 44 (1950); *Pueblo v. Hernández Colón*, 118 D.P.R. 891, 903 (1987).

Desde este punto de vista, notamos que la frase "sometida legalmente" equivale a expresar bajo "custodia legal". Este último concepto, *familiar* en nuestra casuística sobre el delito de fuga, aparece en la versión original del Art. 2 de la Ley de Sentencia Suspendida —Ley Núm. 259 de 3 de abril de 1946, según enmendado por la Ley Núm. 33 de 27 de julio de 1993 (34 L.P.R.A. sec. 1042). Allí se reitera el principio de que toda persona, a quien se le conceda una sentencia suspendida y libertad a prueba, quedará "bajo la custodia legal del tribunal hasta la exposición del período fijado en su sentencia". Art. 1(3) de la ley, 34 L.P.R.A. sec. 1027(3).

Por otro lado, distinto del sentir mayoritario, el término "institución", según el texto del Art. 40 del Código Penal, *supra*, no se refiere *exclusivamente* a las instituciones *carcelarias* operadas por el Estado. Al calificar dicho término con el adjetivo de "adecuada", el Legislador dejó abierta la posibilidad de que la pena de reclusión pudiese ser cum-

plida en otras instituciones. De ahí, que la pena de reclusión, entendida como restricción de la libertad, no depende de la clasificación de la institución en la cual se haya internado al convicto.

> El juez no puede ser ajeno a las transformaciones sociales, científicas y jurídicas. La Ley vive y se desarrolla en ambientes que cambian y evolucionan, y si no queremos estarla reformando de un modo frecuente, preciso es que la adapte[mos], como su propia voluntad permite, a las nuevas necesidades de la época. L. Jiménez de Asúa, *La ley y el delito: principios de derecho penal*, 5ta ed., Buenos Aires, Ed. Sudamericana, 1967, pág. 119.

### III

Aplicada esta normativa a los hechos ante nos, forzoso es concluir que Figueroa Garriga, en efecto, cometió el delito de fuga. Originalmente el tribunal de instancia lo sentenció a tres (3) años de "presidio", que serían cumplidos según el régimen de sentencia suspendida. Como condición, *permanecería ingresado* dos (2) años en el Centro Cristiano Jehová Nissi, donde recibiría tratamiento contra la adicción a drogas. *Únicamente*, si al transcurrir dicho período el Centro Cristiano certificaba su rehabilitación, podría retornar a la comunidad y cumplir su último y tercer año de la sentencia.

Para la fiel ejecución de esa sentencia, la Administración de Corrección emitió el "Certificado de Libertad", que es un documento *rutinario* y cuyo único propósito fue autorizar su egreso de la institución penal y ser *trasladado* al referido centro cristiano. Difícilmente el estado de libertad, del cual gozaba el convicto Figueroa Garriga en virtud de ese certificado, se equipara, siquiera remotamente, con la libertad de la cual goza un ciudadano común. La opinión mayoritaria le adjudica al término y documento "Certificado de Libertad" unas consecuencias de libertad absoluta incorrectas. Figueroa Garriga fue excarcelado *exclusiva-*

*mente* para ser trasladado a cumplir la sentencia impuesta en otra *institución adecuada.*

El susodicho certificado sólo tuvo el efecto de *transferir su custodia de la responsabilidad de la Administración de Corrección hacia el personal del Centro Cristiano Jehová Nissi.* No concebimos cómo la mayoría puede concluir que, en el trayecto de un lugar a otro, Figueroa Garriga estaba en un *limbo o estado de ambivalencia jurídica,* en virtud del cual, era un "hombre libre" y podía, en consecuencia, fugarse sin incurrir en conducta delictiva.

El principio de legalidad, consagrado en el Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031, no le favorece. La lectura integral de los artículos el delito de fuga y las penas de reclusión refleja que con su huida infringió los preceptos citados. Tampoco se trata de crear un delito por analogía; el delito está tipificado y, según visto, su conducta fue considerada por el Legislador aun al adoptar una interpretación restrictiva.

En resumen, en su sentencia, el tribunal de instancia dispuso la forma y el modo para continuar cumpliendo con esta sentencia en el Centro Cristiano Jehová Nissi. El mero traslado del penal a esa institución privada no extinguió la pena de reclusión impuesta. Figueroa Garriga *sabía* que en ambos lugares —en la institución penal y en el referido centro— su libertad de movimiento estaba restringida. Para todos los fines legales conocía que continuaba recluso. Conscientemente abandonó el vehículo durante el trayecto. Al escapar y burlar la custodia legal bajo la que se encontraba, evadió la autoridad del Tribunal y del Estado sobre su persona y cometió el delito de fuga. Su huída revela una clara intención de ignorar el cumplimiento de la sentencia y de reintegrarse clandestinamente a la libre comunidad.