El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
(En reconsideración)
Nos corresponde delimitar nuevamente el alcance de la llamada cláusula de “detención preventiva” que establece nuestra Constitución en su Carta de DerechoO) según (1) resuelto por esta Curia en Ruiz v. Alcaide, 155 D.P.R. 492 (2001).(2)
*233 El 18 de febrero de 2009 emitimos una Opinión en el presente caso, Pueblo v. Pagán Medina, 175 D.P.R. 557 (2009), en la que pautamos que una vez se determina judi-cialmente que un imputado de delito no es procesable se-gún la Regla 240 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y se ordena su reclusión para tratamiento, tan sólo se puede excluir del cómputo del término máximo de de-tención preventiva el tiempo durante el cual éste estuvo efectivamente en una institución adecuada para su tratamiento.(3)
Por la presente, reconsideramos nuestra posición para establecer que el tiempo a excluirse del referido término máximo de detención preventiva se comenzará a contar a partir de la determinación por parte del juez de instancia de “base razonable” para creer que el acusado se encuentra mentalmente incapacitado.
I
Los hechos que nos son pertinentes se encuentran per-fectamente reseñados en la Opinión que hoy reconsidera-mos, Pueblo v. Pagán Medina, supra, págs. 562-565, y que pasamos a reproducir:
El 26 de abril de 2008 el señor Pagán Medina fue arrestado por violación a los Artículos 122 y 208(b) del Código Penal y al Artículo 5.05 de la Ley de Armas. Fue conducido ante un ma- *234 gistrado, quien determinó que hubo causa probable para su arresto y le impuso una fianza de cinco mil dólares. El señor Pagán Medina no prestó la fianza y permaneció detenido pre-ventivamente desde entonces. Posteriormente, el 12 de mayo de 2008, a solicitud de la defensa, el tribunal paralizó los pro-cedimientos y ordenó una evaluación psiquiátrica del impu-tado, a tenor con la Regla 240 de Procedimiento Criminal ... para determinar si el señor Pagán Medina estaba capacitado para ser procesado criminalmente por los cargos en su contra.
La vista se celebró el 20 de agosto de 2008. Compareció el psiquiatra del Estado, el Dr. Rafael Cabrero Aguilar, quien testificó bajo juramento que evaluó al señor Pagán Medina y que, en su opinión, el imputado no reunía los criterios para ser procesado. El tribunal acogió la recomendación del perito mé-dico y determinó que el imputado no se encontraba procesable. Así pues, ordenó el traslado del señor Pagán Medina al Hospital de Psiquiatría Forense de Río Piedras para que recibiera tratamiento.
El 17 de septiembre de 2008 se celebró otra vista, a la cual compareció, nuevamente, el Dr. Rafael Cabrero Aguilar. El pe-rito testificó que el imputado estaba capacitado para compren-der el proceso en su contra y ser sometido a juicio. Así lo de-terminó el tribunal, por lo cual ordenó el traslado del señor Pagán Medina a la institución penal y la continuación de los procedimientos.
El 12 de diciembre de 2008 el señor Pagán Medina presentó una petición de hábeas corpus ante el Tribunal de Primera Instancia. Alegó que se le había confinado, en calidad de su-mariado, en exceso de seis meses sin habérsele celebrado jui-cio y, a tono con la limitación constitucional, reclamó su excarcelación. El 17 de diciembre de 2008 el Tribunal de Pri-mera Instancia declaró “sin lugar” el remedio solicitado con las expresiones siguientes: “no ha transcurrido el término de detención preventiva provista [sic] en ley, (excluyendo el tiempo transcurrido en evaluación al amparo de la Regla 240 de Procedimiento Criminal [)].”
El 8 de enero de 2009, mediante una petición de certiorari, el señor Pagán Medina acudió al Tribunal de Apelaciones. Adujo que el Tribunal de Primera Instancia había errado al resolver que el término de detención preventiva se había inte-rrumpido el 12 de mayo de 2008, cuando el imputado solicitó la celebración de una vista para dilucidar su capacidad mental de acuerdo con la Regla 240 de Procedimiento Criminal. El señor Pagán Medina alegó que lo que procedía para calcular la duración de su confinamiento y, por ende, la interrupción de *235 su detención preventiva, era excluir solamente los días du-rante los cuales estuvo recluido en el hospital psiquiátrico. Anejó una certificación del Departamento de Corrección en la cual se relacionan las fechas en que estuvo ingresado en la institución penal de Bayamón. Por lo tanto, argüyó que habían transcurrido más de seis meses contados desde el 27 de abril de 2008, cuando ingresó a la institución penal, hasta la fecha de su solicitud de excarcelación el 12 de diciembre de ese año.
En cumplimiento de la orden para mostrar causa dictada por el Tribunal de Apelaciones, el 8 de enero de 2009 el Pro-curador General alegó que el término de detención preventiva no debe incluir el período desde que el tribunal tiene una base razonable para creer que el acusado está mentalmente inca-pacitado hasta que determina que el imputado está final-mente capacitado para ser sometido a juicio, puesto que los procedimientos contra el imputado de delito quedan interrum-pidos y el Ministerio Público está impedido de continuar la acción penal. Por lo tanto, según el Procurador General, du-rante los 128 días desde la paralización de los procedimientos cuando el señor Pagán Medina presentó su moción al amparo de la Regla 240 ... hasta que el tribunal determinó nueva-mente que éste era procesable, no estaba pendiente la celebra-ción del juicio y el imputado no estaba detenido preventiva-mente. Así, pues, concluyó que “el término de detención pre-ventiva no puede transcurrir contra el Ministerio Público mientras éste se encuentre legal y constitucionalmente vedado de proseguir con el procesamiento criminal del acusado”.
El 16 de enero de 2009 el Tribunal de Apelaciones denegó el auto de certiorari. El foro apelativo acogió la interpretación del Procurador General y resolvió que al computar el término de seis meses se excluyó correctamente el período durante el cual se dilucidaba la solicitud de la defensa al amparo de la Regla 240 ... es decir, aun antes que se ordenara la reclusión, ya que desde que se presentó la solicitud el Ministerio Público quedó vedado de proseguir la acción criminal contra el acusado.
Oportunamente, el 26 de enero de 2009 el señor Pagán Medina nos solicitó que revocáramos la resolución del foro apelativo. El 28 de enero de 2009 ordenamos a la Procuradora General mostrar causa por la cual no debiéramos hacerlo. El 4 de febrero de 2009 la Procuradora General compareció e in-vocó los mismos fundamentos que había presentado ante el Tribunal de Apelaciones, avalando la decisión recurrida y la determinación del tribunal de instancia.
*236 II
A. La Cláusula de detención preventiva
El Artículo II, Sección 11 de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, ed. 2008, pág. 344, establece que la “detención preventiva antes del juicio no excederá de seis meses”. El término “detención preventiva” se refiere al período anterior al juicio, en el cual el acusado se encuentra detenido preventivamente (sumariado) porque no prestó la fianza impuesta, y en espera de que se le celebre el correspondiente proceso criminal.(4)
La cláusula constitucional de detención preventiva tiene un propósito dual: asegurar la comparecencia del acusado a los procedimientos en defecto de la prestación de una fianza y, a su vez, evitar que a éste se le castigue excesivamente por un delito por el cual no ha sido juzgado.(5) Con relación a estos propósitos, la profesora Resumil, haciendo referencia a su vez a Sánchez v. González, 78 D.P.R. 849 (1955), nos explica que la cláusula de detención preventiva pretende “evitar que a una persona a quien am-para una presunción de inocencia sea restringida por el Estado en el ejercicio de su poder de custodia con el único propósito de hacerle comparecer a juicio”.(6)
En el Informe de la Comisión de la Carta de Derechos de la Convención Constituyente se advierte que, previo a la aprobación de la referida cláusula constitucional, era posi-ble mantener a un acusado detenido mediante la presenta-ción de acusaciones sucesivas cada vez que finalizaba el término de ciento veinte días que establecía el Artículo 448 *237 del extinto Código de Enjuiciamiento Criminal de 1902, desde la acusación hasta la celebración del juicio.(7)
Es claro que esta salvaguarda constitucional de no más de seis meses sumariado en espera del inicio de juicio se ha establecido como una garantía al ciudadano contra posibles excesos de autoridad, que evita que la restricción efectiva de la libertad —cuando ha mediado causa probable para un arresto— se convierta en un castigo anticipado por un delito no juzgado.(8) Ahora bien, con relación a la referida salvaguarda constitucional, y como ya señalamos, en la opinión concurrente del Juez Negrón Fernández en Sánchez v. González, supra, se adelantó que ésta no era absoluta, expresión que fue confirmada por este Tribunal al considerar lo resuelto en Ruiz v. Alcaide, supra.
B. Regla 240 de Procedimiento Criminal
La Regla 239 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece que “[n]inguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada”. Cuando nos referimos a la capacidad o incapacidad mental de una persona en el contexto de encarar un proceso judicial en su contra, aludimos al concepto “procesabilidad del imputado”.(9) El concepto procesabilidad, en términos más específicos, apunta a la lucidez con la que un imputado de delito puede entender la naturaleza y el procedimiento criminal al que se enfrenta. (10)
La prohibición que establece la Regla 239, supra, tiene como propósito “ ‘impedir que se someta a juicio a un *238 reo que es incapaz de comprender la naturaleza y propósito de los procedimientos que contra él se siguen, y como con-secuencia, de defenderse adecuadamente’ ”.(11) Tal prohibi-ción se fundamenta en la normativa jurídica medular que establece que encausar a una persona no procesable viola el debido proceso de ley.(12) El profesor Chiesa, en lo refe-rente, expresa que “se trata de una exigencia de que el acusado pueda entender la naturaleza de los procedimien-tos, de forma que pueda ayudar —a su abogado y a sí mis-mo— a su mejor defensa”.(13)
Es en virtud de dicho precepto que la subsiguiente Regla 240 de Procedimiento Criminal, supra, en lo pertinente, dispone lo siguiente:
... En cualquier momento después de presentada la acusa-ción o denuncia y antes de dictarse la sentencia, si el tribunal tuviere base razonable para creer que el acusado está mental-mente incapacitado, inmediatamente suspenderá los procedi-mientos y señalará una vista para determinar el estado mental del acusado. Deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su es-tado mental. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes. (Énfasis suplido.)
Del texto de esta Regla 240 es claro que una determina-ción inicial de no procesabilidad tiene que fundamentarse en “base razonable” por parte del juez que preside para creer que la persona se encuentra incapacitada mental-mente, en cuyo caso, se suspenderán inmediatamente los procedimientos. En primer lugar, y ante un estatuto que tan celosamente protege la competencia o capacidad del imputado que enfrenta el proceso en su contra, es impor- *239 tante apuntalar que es el juez que preside la sala quien tiene que velar por que en todo momento la persona denun-ciada o acusada se encuentre procesable. En ese contexto, la Regla 240 no sólo establece un mecanismo que garantiza el debido proceso de ley constitucional a un imputado de delito, sino que hace al juez de instancia custodio de ese mecanismo, imponiéndole un deber ineludible.(14)
Por eso, y como corolario de ese deber judicial, el tribunal puede encontrar “base razonable” para entender que el imputado se encuentra no procesable y suspender los procesos, incluso por encima de la objeción del propio imputado. Como ha señalado el Tribunal Supremo de Estados Unidos, es contradictorio argumentar que un acusado puede encontrarse mentalmente incapaz y que a su vez pueda, consciente e inteligentemente, “renunciar” a su derecho de que el tribunal determine su capacidad mental para enfrentar el juicio. (15) Como también se ha señalado:
... when circumstances raise a reasonable doubt about a defendant’s competency, he cannot be master of his own pleadings.(16)
Ahora bien, el que el imputado de delito se encuentre capaz mentalmente requiere, como mínimo, que se halle lo suficientemente coherente como para que le pueda proveer a su abogado la información necesaria o relevante para la elaboración de su defensa. (17) Más allá que la capacidad de recordar y relacionar información pertinente a los hechos, el imputado debe ser capaz de comprender el significado del juicio y entender el papel que él desempeña en el proceso.(18)
*240 Notemos que los elementos antes mencionados constitu-yen, entre otros, indicadores básicos que deben conside-rarse por el juez de instancia al momento de emitir su de-terminación de no procesable; elementos necesarios para la determinación de “base razonable”. En ese sentido, la eva-luación (test) no puede ser una liviana o superficial. Como señaló el Tribunal Supremo de Estados Unidos en Dusky v. United States, 362 U.S. 402, 402 (1960):
... it is not enough ... “that the defendant [is] oriented to time and place and [has] some recollection of events”, but that the “test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.”
Entre los indicadores que también pudieran sugerir que un imputado no es procesable se encuentran el que demuestre un comportamiento errático durante el proceso(19) que al momento de alegarse que no es procesable se traiga ante la consideración del juez evidencia de un historial de comportamiento severamente irracional;(20) que se presente evidencia de que el imputado se encuentra bajo influencia de drogas o sufriendo del “síndrome de retirada”.(21) Además, este Tribunal ya ha resuelto que una evaluación siquiátrica, tarjetas de citas y hospitalizaciones en el Hospital de Siquiatría, y resultados de exámenes que demuestran un cociente intelectual mermado, brindan “base razonable” para creer que el imputado está mental- *241 mente incapacitado y para proceder a la vista de procesabilidad. (22)
Ya hemos establecido, entonces, que “base razonable” para creer que la persona se encuentra incapacitado mentalmente, en el contexto de la Regla 240, conlleva el deber del juez de instancia de asegurarse que la persona que está siendo procesada no se encuentre mentalmente incapacitada; o sea, que se encuentre hábil para entender cabalmente los procedimientos. No obstante, es menester aclarar que, distinto a la incapacidad mental a la que se refiere la defensa de inimputabilidad, la incapacidad mental que contempla la Regla 240 de Procedimiento Criminal, supra, es la que puede darse en cualquier momento después de presentada la acusación o denuncia, lo cual implica que ya se han cometido los hechos y se han considerado delictivos.(23)
Por eso, el sólo planteamiento de inimputabilidad que se presenta como eximente de responsabilidad criminal por parte de la defensa de un imputado, no constituye, de por sí, “base razonable” para creer que éste se encuentra mentalmente incapacitado y, por ende, activar los procedimientos al amparo de la Regla 240 de Procedimiento Criminal, supra.(24) Es claro que una persona puede, al momento de cometer los hechos que se le imputan, encontrarse totalmente incapaz mentalmente de en-tender la naturaleza criminal y las consecuencias de éstos y, no obstante, estar perfectamente hábil en el proceso del juicio para entender los procedimientos que se llevan en su contra por esos mismos hechos.
*242 C. Efectos de la determinación de base razonable
Según el propio texto de la Regla 240 y la norma pautada por este Tribunal, la determinación inicial sobre si existe “base razonable” para dudar de la capacidad del acusado está conferida a la discreción del Tribunal de Primera Instancia. (25) También hemos señalado que el juez de instancia, una vez determina que existe “base razonable”, tiene que “paralizar ipso facto todos los procedimientos, señalar una vista para determinar la condición mental del imputado, y nombrar uno o varios peritos para que evalúen al imputado y atestigüen sobre su condición mental”.(26)
En Pueblo v. Rodríguez Galarza, 117 D.P.R. 455, 457 (1986), específicamente señalamos el procedimiento que establece la Regla 240:
... de resolver [el tribunal] que existe base razonable, la Regla instruye mandatoriamente el procedimiento a seguir: los pro-cedimientos se suspenderán inmediatamente, se señalará una vista para determinar el estado mental del acusado, y se de-signará uno o varios peritos para que examinen al acusado, quien o quienes declararán en la vista señalada sobre el es-tado mental del imputado. La Regla permite[,] además, que en la vista se presente cualquier otra prueba pertinente al estado mental del acusado que deseen ofrecer las partes. En otras palabras que, ... una vez que se establece que existe una duda en cuanto a la capacidad mental del acusado, resulta manda-toria la intervención de un perito siquiatra, quien tendrá que evaluar al acusado y declarar en la vista de procesabilidad en torno a sus hallazgos.
III
Argumenta la Procuradora General, en el contexto de la Regla 240 y lo resuelto en Ruiz v. Alcaide, supra, que *243 “mientras se encuentre pendiente el proceso dictado por la Regla 240[,] el acusado no se ‘encuentra pendiente de la celebración del juicio’, ya que el procedimiento penal queda suspendido en su totalidad, y el Ministerio Público está im-pedido de procesar al acusado”. (Enfasis suplido.(27)
Le asiste la razón a la Procuradora. En primer lugar, el proceso dictado por la Regla 240 no comienza con la vista de procesabilidad (“vista de Regla 240”) —la cual hace obligatoria la comparecencia de prueba pericial— sino con la determinación de “base razonable” por parte del juez de instancia. Mientras el imputado, en quien se ha encontrado “base razonable” para ordenar la evaluación de su condición mental, se encuentre en espera de tal evaluación, el Ministerio Público se encuentra, a su vez, legal y constitucionalmente vedado —“con las manos atadas”— de proseguir con el procesamiento criminal que tiene el deber de ejecutar.
Tal paralización responde a la aparente improcesabilidad del imputado. Por eso, la Regla 240 no le consiente otra acción al juez que no sea suspender “inmediatamente” los procedimientos. De esta manera se asegura que nada más ocurra en el proceso que el imputado pudiera no tener la capacidad de entender, afectando su oportunidad de cooperar con su defensa. Desde que el tribunal, ya sea “motu proprio” o a solicitud de parte, paraliza los procedimientos fundamentado en “base razonable”, se activa una presunción de improcesabilidad que puede ser o no revertida en la correspondiente vista de procesabilidad. Si la “base razonable” se confirma, implica que el sumariado se encontraba no procesable desde el momento que se paralizaron los procedimientos y, por ende, el Ministerio Público absolutamente nada podía hacer. Mientras el imputado se encuentra no procesable, el Estado se encuentra *244 restringido constitucionalmente para poder continuar con los procesos en su contra. (28)
El examen y el testimonio pericial durante la vista de procesabilidad no hacen otra cosa que revisar la determinación inicial del juez de instancia, basada en la evaluación que éste hizo de la aparente improcesabilidad del imputado. El imputado no advino improcesable cuando el perito así lo certificó, sino que ciertamente ya lo estaba cuando el juez suspendió los procedimientos y ordenó la vista de procesabilidad. Es desde ese momento que el ciudadano no está sujeto a ser procesado, la privación de su libertad responde a otras razones y, por ende, no se encuentra bajo detención preventiva. Por lo tanto, ese periodo de tiempo debe excluirse del cómputo del término máximo de detención preventiva.
Que el inicio del periodo de tiempo a ser excluido del cómputo del término máximo de detención preventiva se retrotraiga a la fecha de la determinación de “base razona-ble” que exige la Regla 240 de Procedimiento Criminal, no es algo que se da en un vacío. Más bien, obedece a la lógica y a la realidad. ¿Qué ocurre si una vez se determinó “base razonable”para paralizar los procedimientos, la prueba pe-ricial que se presente durante la vista de la Regla 240 —y que tiene que celebrarse como próximo paso para corrobo-rar la determinación inicial del juez— demuestra que el imputado sí se encuentra procesable? El efecto sería que la aparente improcesabilidad del imputado nunca se materia-lizó, que debe entenderse que siempre estuvo procesable y el término de detención preventiva —que transcurre en contra del Ministerio Público y a favor del propio imputado— nunca se interrumpió.
A contrario sensu, si la prueba pericial ventilada du- *245 rante la vista de Regia 240 confirma que el imputado no se encuentra procesable, es lógico pensar que esa misma era su condición mental al momento de la determinación ini-cial del juez, esto es, al momento de la determinación de “base razonable”.
IV
Somos consientes que en ocasiones —como en el caso de autos— ha pasado mucho más tiempo del que se entiende como razonable para la celebración de la vista de procesabilidad. En Ruiz v. Alcaide, supra, señalamos correctamente que uno de los efectos de una determinación de no procesabilidad, conforme a lo dispuesto en la Regla 240 de Procedimiento Criminal, supra, es que el acusado permanecerá bajo la jurisdicción del tribunal.(29)
Por lo tanto, y considerando lo aquí pautado, el tribunal deberá tomar las provisiones para, desde el momento mismo en que determine la existencia de base razonable y ordene la evaluación requerida por la Regla 240, asegu-rarse que el imputado sea evaluado a la brevedad posible, so pena de desacato. Esto es, el Tribunal de Primera Ins-tancia deberá, ya sea que la “base razonable” acontezca durante el proceso de vista preliminar, desde el acto mismo de la lectura del pliego acusatorio, o en cualquier momento del juicio —sobre todo si el acusado continúa sumariado— asegurarse que se programe esta evaluación.
Además, si por último la evaluación pericial demuestra que la persona no se encuentra procesable —confirmán-dose así la determinación de base razonable inicial— en-tonces el tribunal deberá tomar las provisiones para que la orden de reclusión y traslado a la institución correspon-diente se cumpla con la menor dilación posible; nueva-mente, so pena de desacato.
*246 V
Por todo lo anterior, reconsideramos lo resuelto en Pueblo v. Pagán Medina, supra,(30) y establecemos que el tiempo a excluirse del cómputo del término máximo de detención preventiva de una persona que se encuentra no procesable según la Regla 240 de Procedimiento Criminal, supra, se comenzará a contar a partir de la determinación por parte del juez de instancia de “base razonable" para creer que el acusado o imputado estaba mentalmente incapacitado. Siendo así, se confirma la sentencia del Tribunal de Apelaciones, Región Judicial de Carolina.
La Jueza Asociada Señora Fiol Matta emitió una opi-nión disidente, a la cual se unió el Juez Presidente Señor Hernández Denton. La Juez Asociada Señora Rodríguez Rodríguez no intervino.
— O —

 Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1.

 Ruiz v. Alcaide, 155 D.P.R. 492 (2001), constituyó la primera ocasión en que este Tribunal se expresó con relación a la posibilidad de la interrupción del término de seis meses de detención preventiva que establece esta cláusula de nuestra Constitución. La decisión estableció la viabilidad de la interrupción, destronando así la concepción de que este término era tajantemente definitivo o perentorio. En Sánchez v. González, 78 D.P.R. 849 (1955), se señaló que el término de esta cláusula no era uno renunciable, pero no se pautó norma alguna en vista de que el caso se *233 resolvió mediante sentencia. El Juez Asociado Señor Negrón Fernández emitió una opinión concurrente, a la cual se unieron el Juez Presidente Señor Snyder y el Juez Asociado Señor Sifre. La Sentencia contó con los votos disidentes del Juez Asociado Señor Borinquen Marrero y el Juez Asociado Señor Emilio S. Belaval. El Juez Aso-ciado Señor Pérez Pimentel concurrió con el resultado. En la opinión concurrente del Juez Asociado Señor Negrón Fernández se señaló específicamente que las solicitudes de suspensión del juicio, por parte del acusado, no equivalen a una renuncia al derecho a que la detención preventiva no exceda de seis meses. No obstante, en la opinión también se expresó que este derecho a un término máximo de seis meses no era absoluto.

 Contra esa determinación, la Procuradora General compareció el 6 de marzo de 2009 mediante una Solicitud de Reconsideración.

 Ruiz v. Alcaide, supra, pág. 502; Pueblo v. González Vega, 147 D.P.R. 692 (1999); Pueblo v. Figueroa Garriga, 140 D.P.R. 225, 232 (1996).

 Pueblo v. Paonesa Arroyo, 173 D.P.R. 203 (2008).

 O.E. Resumil, Derecho Procesal Penal, New Hampshire, Ed. Butterworth, 1993, T. 2, Sec. 25.4(a), pág. 248.

 4 Diario de Sesiones de la Convención Constituyente 2571 (1952).

 Resumil, op. cit., pág. 248.

 Pueblo v. Castillo Torres, 107 D.P.R. 551, 555 (1978).

 Ruiz v. Alcaide, supra, pág. 499; E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1993, Vol. III, pág. 348.

 Pueblo v. Santiago Torres, 154 D.P.R. 291, 300 (2001).

 Ruiz v. Alcaide, supra, pág. 501; Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Medina v. California, 505 U.S. 437, 453 (1992) (“the criminal trial of an incompetent defendant violates due process”); Drope v. Missouri, 420 U.S. 162, 172 (1975); Pate v. Robinson, 383 U.S. 375, 378 (1966); Bishop v. United States, 350 U.S. 961 (1956). Véase S.J. Kane, Competency to Stand Trial, 87 (Num. 5) Geo. L.J. 1463, 1467 (1999).

 Chiesa Aponte, op. cit, pág. 348.

 Véase Pate v. Robinson, supra, en el que el Tribunal Supremo de Estados Unidos interpreta un estatuto muy similar a nuestra Regla 240 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

íd.

 Seidner v. United States, 260 F.2d 732, 734 (Cir. D.C. 1958).

 Incompetency to Stand Trial, 81 Harv. L. Rev. 454, 457 (1967).

 íd.

 Pouncey v. United States, 349 F.2d 699 (Cir. D.C. 1965).

 Pate v. Robinson, supra.

 Hasnford v. United States, 365 F.2d. 920 (Cir. D.C. 1966). El “síndrome de retirada” es un síndrome de hiperaetividad que ocurre como producto de la retirada de un fármaco hipnótico-sedante a un individuo dependiente física o psicológica-mente, luego de haberlo utilizado por un período de tiempo de manera crónica, o por abuso de éste. Las manifestaciones incluyen convulsiones, deseo del fármaco, disfo-nía, cefalea, insomnio, ansiedad, anorexia, nauseas, vómito, debilidad muscular, ta-quicardia y tremor. La agitación y la confusión puede progresar a delirio, desorien-tación y alucinaciones.

 Pueblo v. Santiago Torres, supra.

 Pueblo v. Castillo Torres, supra, pág. 555; Camareno Maldonado v. Tribunal Superior, 101 D.P.R. 552, 560 (1973).

 Pueblo v. Santiago Torres, supra.

 Pueblo v. Santiago Torres, supra; Pueblo v. Rodríguez Galarza, 117 D.P.R. 455 (1986); Camareno Maldonado v. Tribunal Superior, supra; Pueblo v. Cruz Román, 84 D.P.R. 451 (1962).

 Pueblo v. Santiago Torres, supra, pág. 301. Véanse: Pueblo v. Rodríguez Galarza, supra; Pate v. Robinson, supra, pág. 385; Chiesa Aponte, op. cit.

 Solicitud de reconsideración, pág. 9.

 Ruiz v. Alcaide, supra, pág. 501; Commonwealth v. Ware, 329 A.2d 258, 264 (1974); Commonwealth v. Bruno, 255 A.2d 519 (1969); B. J. Winick, Reforming Incompetency to Stand Trial and Plead Guilty: A Restated Proposal and a response to Professor Bonnie, 85 (Núm. 3) J. Crim. L. & Criminology 571, 575-576 (1995).

 Ruiz v. Alcaide, supra, pág. 501; Chiesa Aponte, op. cit., págs. 362-363.

 Opinión de 18 de febrero de 2009.