EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Enoc Díaz Alicea<br><br>Recurrido<br><br>─────────────────────<br><br>El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Kelvin Rivera Ortiz<br><br>Recurrido | Certiorari<br><br>2020 TSPR 56<br><br>204 DPR _____ |

Número del Caso:  CC-2018-0924
                  Cons. con
              CC-2018-0928

Fecha:  15 de julio de 2020

Tribunal de Apelaciones:

        Panel III

Oficina del Procurador General:

        Lcdo. Isaías Sánchez Báez
        Procurador General

        Lcda. Lorena Cortés Rivera
        Subprocuradora General

        Lcdo. Pedro A. Vázquez Montijo
        Subprocuradora General

        Lcdo. Andrés A. Pérez Correa
        Procurador General Auxiliar

    Abogados de las partes recurridas:

        Lcdo. Ramón A. Nevárez Ortiz
        Lcdo. Michel A. Rachid Fournier

Materia:  Recursos Extraordinarios: Hábeas Corpus
No procede el remedio de hábeas corpus por violación al término de detención preventiva cuando la solicitud de hábeas corpus se presenta después de comenzado el juicio en su fondo.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
|  |  | *Certiorari* |
| El Pueblo de Puerto Rico | | |
| Peticionario | | |
| v. | CC-2018-0924 | |
| Enoc Díaz Alicea | Cons. con | |
| Recurrido | CC-2018-0928 | |
| El Pueblo de Puerto Rico | | |
| Peticionario | | |
| v. | | |
| Kelvin Rivera Ortiz | | |
| Recurrido | | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 15 de julio de 2020.

Comparece ante nos el Pueblo de Puerto Rico (el peticionario) y solicita la revisión de dos Sentencias del Tribunal de Apelaciones en las que resolvió que procedía conceder las solicitudes de *hábeas corpus* que presentaron el Sr. Kelvin Rivera Ortiz y el Sr. Enoc Díaz Alicea (los recurridos) ante la violación de la protección constitucional contra la detención preventiva en exceso de seis (6) meses. Como corolario, el foro apelativo intermedio revocó ambas Resoluciones en las que el foro primario denegó las solicitudes de excarcelación de los recurridos.

El presente recurso nos brinda la oportunidad de expresarnos en torno a la detención preventiva, el recurso extraordinario de *hábeas corpus* y la relación entre ambos. Específicamente, debemos determinar si procede el remedio del *hábeas corpus* por violación al término de detención preventiva cuando la solicitud de *hábeas corpus* se presenta **después de que el Juicio ha comenzado**. Examinado el expediente y evaluados los argumentos de las partes, resolvemos en la negativa.

A continuación, reseñamos los hechos que dieron génesis a la controversia de autos.

I

El Ministerio Público presentó varias denuncias contra los recurridos y otros cuatro (4) acusados por hechos que ocurrieron el 20 de octubre de 2017. Las denuncias imputaban infracción al Artículo 93 del Código Penal de Puerto Rico de 2012 (Asesinato en Primer Grado), 33 LPRA sec. 5142, y a los Artículos 5.04 y 5.15 de la Ley Núm. 404-2000, conocida como Ley de Armas de Puerto Rico, 25 LPRA secs. 458c y 458n. El 28 de octubre de 2017 el Tribunal de Primera Instancia determinó que existía causa probable para arrestar a los recurridos, por lo que ordenó el arresto de ambos. Los recurridos fueron arrestados el 9 de enero de 2018. Ninguno de los dos prestó fianza por lo que el 10 de enero de 2018 fueron ingresados a prisión.

Luego de varios trámites, el 30 de enero de 2018 comenzó la Vista Preliminar contra los recurridos. La Vista

Preliminar se extendió por la amplia prueba que desfiló el Ministerio Público y por la cantidad de coacusados. Por un lado, respecto al señor Díaz Alicea, la Vista Preliminar se extendió hasta el 26 de marzo de 2018, fecha en la que el Tribunal de Primera Instancia determinó que existía causa probable para acusarlo por todas las denuncias presentadas en su contra. Por otro lado, respecto al señor Rivera Ortiz, la Vista Preliminar se extendió hasta el 22 de mayo de 2018, fecha en la que el Tribunal de Primera Instancia determinó que existía causa probable para acusarlo por todas las denuncias presentadas. Oportunamente, el Ministerio Público presentó las acusaciones correspondientes y el 30 de mayo de 2018 se celebró el Acto de Lectura de Acusación.

Así las cosas, el 21 de junio de 2018 se celebró la Conferencia con Antelación al Juicio. El Ministerio Público hizo una serie de planteamientos en dicha conferencia. *Inter alia*, **argumentó que a algunos de los acusados se les habían vencido los términos de detención preventiva y la Defensa había determinado como estrategia no presentar los recursos de *hábeas corpus* correspondientes.**[1]

Posteriormente, el foro primario señaló el Juicio en su Fondo para el 10 de julio de 2018; sin embargo, los recurridos no comparecieron debido a que la Rama Ejecutiva decretó un receso ante el paso del Huracán Beryl.[2] Así las cosas, el

---

[1] *Véase* Minuta de la *Conferencia con Antelación al Juicio* celebrada el 21 de junio de 2018 pág. 4.

[2] *Véase Orden Ejecutiva del Gobernador de Puerto Rico, Hon. Ricardo A. Rosselló Nevares, Declarando Estado de Emergencia a Consecuencia del Cercano Paso del Huracán Beryl*, Boletín Administrativo Núm. OE-2018-031.

Juicio en su Fondo quedó recalendarizado y comenzó el 17 de julio de 2018.[3] Antes de comenzar el Juicio, uno de los coacusados planteó la violación a los términos de Juicio rápido; sin embargo, los recurridos no hicieron ningún planteamiento similar.

El 1 de agosto de 2018, **luego de tres (3) semanas de haber comenzado el Juicio,** los recurridos presentaron una *Moción de hábeas corpus*. Arguyeron que el 8 de julio de 2018 se había cumplido el término de seis (6) meses desde que fueron encarcelados sin que hubiese comenzado el Juicio en su contra, por lo que procedía su excarcelación. El 1 de agosto de 2018 el Tribunal de Primera Instancia emitió una Resolución en la que declaró No Ha Lugar la *Moción de hábeas corpus*. Concluyó que **a la fecha en la que los recurridos presentaron la solicitud de *hábeas corpus* el Juicio ya había comenzado** y, como consecuencia, la detención de los recurridos no violaba la protección contra la detención preventiva.

Inconformes, los recurridos acudieron por separado al Tribunal de Apelaciones mediante los recursos de *certiorari* correspondientes.[4] Plantearon que el Tribunal de Primera Instancia erró al no concederles la solicitud de *hábeas corpus* a pesar de haber transcurrido los seis (6) meses de detención preventiva sin que hubiera comenzado el Juicio. El 7 de septiembre de 2018 un Panel del Tribunal de Apelaciones emitió

---

[3] Se juramentó el primer testigo el 17 de julio de 2018 lo que dio paso al comienzo del juicio en su fondo. *Pueblo v. Paonesa Arroyo*, 173 DPR 203, 212 (2008).
[4] *Véase El Pueblo de Puerto Rico v. Enoc Díaz Rivera*, CC-2018-0924 y *El Pueblo de Puerto Rico v. Kelvin Rivera Ortiz*, CC-2018-0928.

una *Sentencia*[5] en la que expidió el recurso de *certiorari* que presentó el señor Díaz Alicea y revocó la determinación del Tribunal de Primera Instancia. El 18 de septiembre de 2018 el Procurador General presentó una *Moción de Reconsideración* y expuso que el señor Díaz Alicea no reclamó el derecho a ser excarcelado oportunamente, aunque tuvo la oportunidad de hacerlo. El 21 de septiembre de 2019 el Tribunal de Apelaciones denegó la *Moción de Reconsideración* del Procurador General.

Por su parte, el 6 de septiembre de 2018, otro Panel del Tribunal de Apelaciones emitió una *Resolución* en la que le concedió al Procurador General un término de cinco (5) días para que expusiera su posición en cuanto a los méritos del recurso de *certiorari* presentado por el señor Rivera Ortiz. No obstante, el 10 de septiembre de 2018 el señor Rivera Ortiz presentó una *Moción de Reconsideración* en la que argumentó que el Tribunal de Apelaciones debía revocar la determinación del Tribunal de Primera Instancia en su caso, al igual que lo hizo el panel hermano en el caso de *Pueblo v. Enoc Díaz Alicea*, KLCE201801232. El 13 de septiembre de 2018 el Tribunal de Apelaciones emitió una *Resolución* en la que denegó la *Moción de Reconsideración* que presentó el señor Rivera Ortiz.

El 14 de septiembre de 2018 el Procurador General presentó un *Escrito en Cumplimiento de Orden* en el que se opuso a la expedición del recurso del señor Rivera Ortiz. Arguyó que la Defensa pudo plantear el reclamo de violación

---

[5] *El Pueblo de Puerto Rico v. Enoc Díaz Alicea*, KLCE201801232.

al término de detención preventiva en varias ocasiones antes del comienzo del Juicio, pero no lo hizo y, por el contrario, esperó a que transcurrieran varias semanas, por lo que la solicitud fue tardía. **Adujo que la Defensa presentó el *hábeas corpus* después de que comenzó el Juicio como estrategia de litigio, aun cuando el Ministerio Público le advirtió al Tribunal durante la Conferencia con Antelación al Juicio que a varios de los acusados se les había vencido el término de detención preventiva.** El 27 de septiembre de 2019 el foro apelativo intermedio emitió una *Sentencia*[6] en la que revocó la determinación del Tribunal de Primera Instancia y ordenó la excarcelación del señor Rivera Ortiz.

Inconforme con ambas determinaciones, el Procurador General presentó la Petición de *certiorari* ante nos y señaló la comisión del error siguiente:

> Erró el Tribunal de Apelaciones al ordenar la excarcelación de los recurridos basándose en el término constitucional de detención preventiva, a pesar de que ambos presentaron su reclamo luego de que el Juicio en su contra hubiera comenzado.

El 25 de enero de 2019 se expidieron ambos autos de *certiorari,* y por plantear la misma controversia de derecho, fueron consolidados. No obstante, el 6 de noviembre de 2019 el Procurador General presentó *Moción Informativa* en la que nos expuso que el Tribunal de Primera Instancia procedió a dictar *Sentencias* en contra de los recurridos el 29 de agosto de 2019 y el 4 de septiembre de 2019 y les impuso la pena de noventa y nueve (99) años de reclusión a ambos. El 26 de

---

[6] *El Pueblo de Puerto Rico v. Kelvin Rivera Ortiz*, KLCE201801227.

noviembre de 2019 emitimos una *Resolución* proveyendo un término de veinte (20) días a todas las partes para que se expresaran en cuanto a la *Moción Informativa* presentada por el Procurador General, ante la posibilidad de que la controversia ante nos se hubiera tornado académica.

El 16 de diciembre de 2019 el Procurador General presentó *Moción en Cumplimiento de Orden*. Sostuvo que la expedición de una petición de c*ertiorari* normalmente paraliza los procedimientos ante los tribunales inferiores, sin embargo, en el presente caso existe una excepción. Específicamente, señaló que los procedimientos de *hábeas corpus* ante el Tribunal de Primera Instancia se presentaron como un caso separado e independiente y cuyo curso procesal es paralelo al proceso criminal. Indicó que, por tal razón, a los casos de *hábeas corpus* se les asignó un alfanumérico distinto a las causas penales en contra de los recurridos. El Procurador General citó el caso de *Pueblo v. Pagán Medina*, 178 DPR 228 (2010), y expuso que, conforme a lo resuelto, este Tribunal acogió la reconsideración del Ministerio Público y resolvió en los méritos, como excepción a la doctrina de academicidad, por ser un asunto recurrente, de naturaleza efímera y, por consiguiente, capaz de eludir la revisión judicial.

El 17 de diciembre de 2019[7] el Sr. Kelvin Rivera Ortiz, por conducto de su representación legal presentó un *Escrito*

---

[7] El Sr. Kelvin Rivera Ortiz presentó el 17 de diciembre de 2019 *Escrito en Cumplimiento de Orden*, habiéndose ya vencido el término de veinte (20) días, el lunes 16 de diciembre de 2019.

*en Cumplimiento de Orden* en el que expuso que la controversia ante nos es académica ya que el compareciente actualmente no está en detención preventiva. Así las cosas, el 14 de enero de 2020 emitimos una *Resolución* dando por cumplida nuestra *Resolución* del 26 de noviembre de 2019.

Contando con el beneficio de los alegatos de ambas partes, nos encontramos en posición de resolver el recurso sin ulterior trámite.

## II

## A.

La doctrina de justiciabilidad impone una limitación a los tribunales en su intervención para resolver controversias reales y definidas que afectan las relaciones jurídicas de partes antagónicas u opuestas. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 981-982 (2011); *U.P.R. v. Laborde Torres y otros I*, 180 DPR 253 (2010). Conforme a esta doctrina, los tribunales solo deben evaluar casos que sean justiciables y por lo tanto no deben atender controversias hipotéticas, abstractas o ficticias. *Moreno v. Pres. U.P.R. II*, 178 DPR 969 (2010); *E.L.A. v. Aguayo*, 80 DPR 552, 584 (1958). En fin, los tribunales solo pueden decidir cuestiones presentadas en un contexto adversativo y en una forma históricamente visualizada como capaz de ser resuelta a través del proceso judicial.

Por otra parte, la doctrina de academicidad es una manifestación del principio de justiciabilidad. *Noriega v. Hernández Colón*, 135 DPR 406 (1994). Por lo tanto, aun cuando

se cumplan todos los criterios necesarios para que una controversia sea catalogada como justiciable, si ocurren cambios en los hechos o el derecho durante el trámite judicial que tornan académica o ficticia la solución del caso los tribunales deberán de abstenerse en intervenir. *Torres Santiago v. Depto. Justicia*, supra; *U.P.R. v. Laborde Torres y otros I*, supra; *El Vocero v. Junta de Planificación*, 121 DPR 115, 123 (1988); *Com. de la Mujer v. Srio. de Justicia*, 109 DPR 715, 724 (1980). La doctrina de academicidad dispone que un caso se torna académico cuando la cuestión en controversia pierde eficacia ante el paso del tiempo, ya sea porque ocurrieron cambios en los hechos o en el derecho, y la misma se vuelve inexistente.

No obstante, la doctrina de academicidad tiene excepciones: (1) cuando se plantea ante el foro judicial una cuestión **recurrente** o **susceptible de volver a ocurrir y que tienda a evadir la revisión judicial**; (2) cuando la situación de hechos ha sido modificada por el demandado, pero el cambio no aparenta ser permanente, y (3) cuando se tornan académicos aspectos de la controversia, pero subsisten consecuencias colaterales vigentes. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 73-74 (2017); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 983 (2011); *Angueira v. J.L.B.P.*, 150 DPR 10, 19 (2000). (Énfasis Suplido).

Señalamos que la "excepción de recurrencia" es utilizada cuando estamos ante una controversia o polémica que tiene la probabilidad de repetirse y de evadir la revisión judicial.

*Asoc. de Periodistas v. González*, 127 DPR 704, 721 (1991). Esto incluye situaciones donde la controversia se ha vuelto académica debido a circunstancias de tiempo relacionadas con la naturaleza de la acción o los procesos. *Com. de la Mujer v. Srio. de Justicia*, 109 DPR 715 (1980). Cónsono con lo anterior, la excepción de recurrencia trata sobre aquellas instancias en que es razonable pensar que la misma controversia puede surgir en el futuro y que nuevamente se tornará académica antes de que algún tribunal pueda adjudicarla.

Para determinar si se configura la excepción de recurrencia deben considerarse los factores siguientes: (1) la probabilidad de recurrencia de la controversia; (2) la identidad de las partes involucradas en el procedimiento y (3) la probabilidad de que el asunto eluda revisión judicial. *Angueira v. J.L.B.P.*, supra. La probabilidad de recurrencia es el factor primario para evaluar si una determinación del tribunal promoverá finalidad. **Si hay una probabilidad razonable de que una controversia se repita el tribunal debe considerar el asunto planteado**. *Asoc. de Periodistas v. González*, supra. (Énfasis suplido). Sobre la identidad de las partes, no es necesario que al repetirse la controversia se vean afectadas las mismas partes, sino que puede surgir entre distintos protagonistas. A su vez, para determinar si el asunto es propenso a continuar evadiendo la revisión judicial, se considera la naturaleza de la controversia. Este requisito se cumple en aquellas controversias que por su

índole son de corta duración, aunque pudiera haber otras razones además de brevedad cronológica. *Íd.*

**B.**

La Sección 11 del Artículo II de la Constitución de Puerto Rico, LPRA Tomo 1, establece que la "detención preventiva antes del Juicio no excederá de seis meses". Dicha protección surge del derecho que tiene todo acusado a un Juicio justo, rápido y público. El término de detención preventiva comienza a transcurrir luego de que el Tribunal determina causa probable para arresto. *Ex Parte Ponce Ayala*, 179 DPR 18 (2010). Es en este momento que el acusado tiene derecho a quedar en libertad bajo fianza. No obstante, cuando el acusado no puede satisfacer la fianza procede su encarcelamiento. *Pueblo v. Pagán Medina*, 178 DPR 228, 236 (2010). Esta disposición no existe ni tiene equivalente en la Constitución de los Estados Unidos. *Pueblo v. Paonesa Arroyo*, 173 DPR 203, 213 (2008); E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1992, Vol. II, Sec. 17.2, pág. 461.

Del Diario de Sesiones de la Convención Constituyente surge el proceso mediante el cual se aprobó esta disposición constitucional. Esta obra es de suma importancia ya que nos da un trasfondo histórico acerca del significado del texto constitucional y sobre el proceso que se llevó a cabo para aprobar nuestra Constitución. *In re Aprob. Rs. Y Com. Esp. Ind.*, 184 DPR 575, 582 (2012). Cuando los delegados discutieron sobre cuándo procedía invocar el derecho

constitucional de detención preventiva la interrogante fue aclarada de la forma siguiente:

> Sr. BENITEZ: No, no. Precisamente quedó aclarado, señor Soto, al indicarse esta cláusula, "antes de Juicio", que se establecía a los fines de dejar explícito el hecho de que la protección que aquí se quería establecer era la protección para la persona que aún no había sido juzgada y que sin haber sido juzgada en la actualidad a veces ocurría que estaba por más de seis meses en la cárcel, porque no había podido prestar fianza o porque no se le había celebrado Juicio. **Entonces lo que se ha querido subsanar es esta situación particular donde no ha mediado Juicio alguno. Esto lo que quiere decir es que en los casos donde no ha mediado Juicio, una persona no puede estar detenida en la cárcel por más de seis meses.** Diario de Sesiones de la Convención Constituyente 1597 (1952).

Del texto de la Constitución surge que el periodo de "detención preventiva" se refiere **al período anterior al Juicio**, en el cual el acusado se encuentra detenido preventivamente porque no prestó la fianza impuesta, y **se encuentra en espera de que se le celebre el Juicio criminal.** *Pueblo v. Pagán Medina*, supra, pág. 236; *Ruiz v. Alcaide*, 155 DPR 492, 502 (2001); *Pueblo v. González Vega*, 147 DPR 692 (1999); *Pueblo v. Figueroa Garriga*, 140 DPR 225, 232 (1996).

Hemos determinado que el derecho a la detención preventiva es una garantía constitucional que protege a los acusados de que se les castigue excesivamente por un delito por el cual no han sido juzgados. A su vez, el derecho a la detención preventiva cumple con asegurar que el acusado comparezca a los procedimientos cuando no se ha prestado fianza. *Pueblo v. Paonesa Arroyo*, supra; *Pueblo v. Martínez Torres*, 126 DPR 561 (1990). Sin embargo, este Tribunal ha establecido que dicha cláusula constitucional **no es una**

**absoluta.** "Como es un derecho que madura normalmente por el mero lapso del tiempo, ni la ilegalidad ni el fraude de un acusado--en actos tendentes a producir la incapacidad del Estado para someterle a Juicio--ampararían su ejercicio incondicional." *Sánchez v. González*, 78 DPR 849 (1955). Cónsono a esto, en *Pueblo v. Pagán Medina*, supra, pág. 237 establecimos que:

> Es claro que esta salvaguarda constitucional de no más de seis meses sumariado en espera del inicio de Juicio se ha establecido como una garantía al ciudadano contra posibles excesos de autoridad, que evita que la restricción efectiva de la libertad -cuando ha mediado causa probable para un arresto— se convierta en un castigo anticipado por un delito no juzgado. Ahora bien, con relación a la referida salvaguarda constitucional, y como ya señalamos, en la Opinión Concurrente del Juez Negrón Fernández en *Sánchez v. González* […] se adelantó **que ésta no era absoluta, expresión que fue confirmada por este Tribunal al considerar lo resuelto en *Ruiz v. Alcaide* […].** Íd. (Énfasis suplido).

### C.

El auto de *hábeas corpus* es un recurso extraordinario de naturaleza civil, mediante el cual una persona que está privada ilegalmente de su libertad solicita de la autoridad judicial competente que investigue la causa de su detención. *Quiles v. Del Valle*, 167 DPR 458, 466 (2006); *Ramos Rosa v. Maldonado Vázquez*, 123 DPR 885, 889 (1989). El *hábeas corpus* está reconocido en la Sección 13 del Artículo II de la Constitución de Puerto Rico, LPRA Tomo 1, y está codificado en el Código de Enjuiciamiento Criminal, 34 LPRA secs. 1741-1780. Es importante hacer énfasis en que el auto de *hábeas corpus* es un **recurso extraordinario** por lo que su uso debe estar limitado

a situaciones excepcionales donde se hayan agotado todos los remedios ordinarios disponibles antes de recurrir a este recurso. *Quiles v. Del Valle*, supra, pág. 467; *Ortiz v. Alcaide Penitencia Estatal*, 131 DPR 849, 861 (1992). Así mismo, el uso del auto de *hábeas corpus* debe limitarse a situaciones que en realidad lo ameriten. *Ortiz v. Alcaide Penitenciaría Estatal*, ante, pág. 861.

Conforme a esto, hemos resuelto que, salvo circunstancias excepcionales, no se concederá el auto de *hábeas corpus* en sustitución de los remedios ordinarios provistos en la ley. *Otero Fernández v. Alguacil*, 116 DPR 733, 740 (1985). La profesora Dora Nevárez Muñiz en su *Sumario de Derecho Procesal Penal Puertorriqueño* abunda sobre el auto de *hábeas corpus* y expone, *inter alia*, que es un recurso altamente privilegiado, pero que, a su vez, tiene limitaciones en su uso. Por lo que el auto de *hábeas corpus* **no se expedirá a menos que exista una situación extraordinaria o anómala.**[8] Señala la profesora Nevárez Muñiz que para invocar el auto de *hábeas corpus* "la persona tiene que estar efectivamente privada de su libertad, *i.e.*, encarcelada, bajo custodia o ilegalmente detenida, ya fuese por el Estado o por un ciudadano en particular. No aplica, por tanto, cuando la persona ha prestado la fianza o ha sido citada para Juicio".[9]

---

[8] D. Muñiz Nevárez, *Sumario de Derecho Procesal Penal Puertorriqueño*, 10ma ed. rev., San Juan, Instituto para el Desarrollo del Derecho, 2014, pág. 259.
[9] Íd.

La concesión de un *hábeas corpus* ante la violación al término de detención preventiva **no es absoluta**. Hemos reconocido varios escenarios en los que -a pesar de haber transcurrido los seis (6) meses de detención preventiva- procede denegar un *hábeas corpus*. En *Sánchez v. González*, 78 DPR 849, 858 (1955), establecimos que no procede excarcelar a un acusado que ha sido detenido preventivamente por más de seis (6) meses, cuando el acusado produjo la incapacidad del Estado de someterlo a Juicio mediante fraude o actos ilegales. Es decir, no se concederá un *hábeas corpus* por violación al término de detención preventiva cuando el acusado ha actuado ilegal o fraudulentamente para impedir el Juicio. Por otra parte, en *Pueblo v. Pagán Medina*, supra, págs. 243-244, resolvimos que no se expedirá el auto de *hábeas corpus* por violación al término de detención preventiva cuando el acusado está en un proceso de determinación de procesabilidad. En fin, aun en casos en los que una persona ha sido detenida preventivamente por más de seis (6) meses, no necesariamente procede conceder un *hábeas corpus*. Indiscutiblemente, todo Juicio criminal se debe llevar a cabo dentro de los límites impuestos tanto por nuestra Constitución, así como por las Reglas de Procedimiento Criminal. Sin embargo, no procede un *hábeas corpus* cuando se instó a destiempo, ya sea porque el mismo fue invocado antes de que se cumpliera el término de seis (6) meses o porque este ha sido invocado tardíamente.

**III**

**A.**

El derecho de detención preventiva es uno de alto interés público. La cuestión ante nos versa sobre la procedencia de un auto de *hábeas corpus* cuando -a pesar de que la detención preventiva de un acusado excedió seis (6) meses- dicha solicitud se presentó luego de que el Juicio criminal contra el acusado había comenzado. En este caso, la expedición del *hábeas corpus* no tuvo el efecto de paralizar el Juicio en su fondo, sino que se limitó a paralizar la orden de excarcelación. En *Pueblo v. Pagán Medina*, 177 DPR 842, 847 (2010) (En reconsideración), establecimos que "tal excarcelación se suscita en el contexto de una petición de *hábeas corpus*, que constituye un procedimiento de naturaleza civil, distinto al proceso criminal que se lleva contra el excarcelado".

La controversia ante nos es una susceptible de volver a ocurrir y evadir la revisión judicial. Por lo tanto, requiere que nos pronunciemos al respecto ya que, más allá de ser una cuestión recurrente, "su importancia es aún mayor debido a que lo que tenemos ante nuestra consideración es la interpretación de una norma constitucional —la detención preventiva antes del juicio no excederá de seis meses— que incide directamente sobre una cuestión de alto interés público: la capacidad del Estado de asegurar que los imputados de delitos comparezcan a la celebración del juicio en su fondo". *Pueblo v. Pagán Medina*, supra, pág. 846.

En esta ocasión, resolvemos que no procede conceder un auto de *hábeas corpus* cuando -a pesar de que la detención preventiva de un acusado excedió seis (6) meses- dicha solicitud se presentó luego de que el Juicio criminal contra el acusado había comenzado. El derecho a ser excarcelado transcurridos los seis (6) meses de detención preventiva supone el ejercicio de tal derecho; es decir, **el acusado debe solicitar su excarcelación antes de que comience el Juicio.**

Del debate suscitado en la Convención Constituyente surgen varias expresiones importantes y reveladoras en cuanto al propósito primordial y la extensión de la protección contra la detención preventiva. Particularmente, y en lo pertinente, en un turno de exposición el Sr. González Blanes hizo dos (2) comentarios, a saber: (1) "[l]o que se quiere evitar con [la detención preventiva] es que un individuo esté preventivamente detenido por tiempo [i]limitado, como acontece muchas veces en los tribunales", y (2) "[y]o entiendo . . . que la detención preventiva muere inmediatamente de celebrarse el Juicio". *Íd.* Cabe destacar que este Tribunal ha determinado que el derecho a la detención preventiva es una garantía constitucional que protege a los acusados de que se le castigue excesivamente por un delito por el cual no han sido juzgados. Asimismo, hemos indicado que la protección contra las detenciones preventivas en exceso de seis (6) meses está íntimamente relacionada al derecho de todo acusado a un Juicio rápido.

En vista de lo anterior, cabe concluir que la consideración subyacente en el derecho a no ser detenido

preventivamente por más de seis (6) meses es la incertidumbre que se le crea a la persona imputada de un delito. Específicamente, se trata de proteger a una persona que ha sido detenida por más de seis (6) meses sin que haya comenzado el Juicio en su contra, ante la incertidumbre de cuándo en efecto comenzará el Juicio. Una vez un acusado solicita un *hábeas corpus*-luego de que ha comenzado el Juicio en su contra-alegando que estuvo encarcelado por más de seis (6) meses sin que se le celebrara el Juicio, el elemento de incertidumbre ya ha dejado de existir. En estos casos, el Juicio ya ha comenzado y, por lo tanto, no existe riesgo real de que el acusado permanezca detenido preventivamente por tiempo indefinido.

**B.**

En el presente caso, los recurridos fueron encarcelados el 10 de enero de 2018. Al no poder prestar fianza, el término de detención preventiva comenzó a transcurrir ese día. Así las cosas, **el 8 de julio de 2018** transcurrieron los seis (6) meses de detención preventiva. Tanto los recurridos como sus respectivos abogados tenían conocimiento de este hecho. Originalmente, se había señalado que se llevaría a cabo el Juicio en su Fondo el 10 de julio de 2018, dos (2) días después de haber vencido el término, sin embargo, el Juicio no se llevó a cabo en la fecha pautada debido a que la Rama Ejecutiva ordenó un receso ante el paso del Huracán Beryl. En esa ocasión, **los abogados de la Defensa ni los recurridos realizaron ningún planteamiento con respecto a la violación**

**al término de detención preventiva, aunque tenían conocimiento de que el término de detención preventiva había vencido.** Como reseñamos anteriormente, el Juicio en su Fondo fue recalendarizado para el 17 de julio de 2018 y nuevamente no surgió señalamiento alguno relacionado a la detención preventiva por parte de los abogados de la Defensa ni de los recurridos.

Por otra parte, y según intimamos, durante la *Vista de Conferencia con Antelación al Juicio* celebrada el **21 de junio de 2018,** el Ministerio Público expuso su preocupación en cuanto al término de detención preventiva e indicó que "entre los acusados, había algunos a los cuales el término de detención preventiva se había vencido y la Defensa ha determinado como estrategia no radicar".[10] En fin, ninguno de los recurridos presentó un recurso de *hábeas corpus* a pesar de que sabían que su detención preventiva excedía los seis (6) meses.

Conforme lo anterior, la Defensa tuvo amplia oportunidad para solicitar la excarcelación debido al vencimiento del término de detención preventiva. Primero, el 10 de julio de 2018 -fecha en que originalmente se celebraría el Juicio- los abogados de las partes discutieron una serie de asuntos con el Juez, según surge de la Minuta.[11] Ninguno de los abogados trajo la violación de la disposición constitucional del término de detención preventiva a la atención del Tribunal.

---

[10] *Véase* Minuta de la *Conferencia con Antelación al Juicio* celebrada el 21 de junio de 2018 pág. 4.
[11] *Véase* Minuta celebrada el 10 de julio de 2018 pág. 45.

Segundo, el 17 de julio de 2018 -fecha en la que en efecto comenzó el Juicio- los abogados de Defensa tampoco hicieron el planteamiento correspondiente; ni antes de comenzar el Juicio, ni después de haber culminado las labores de ese día. Es decir, transcurrió una semana entre el vencimiento de la detención preventiva y el comienzo de la Vista en su Fondo y, a pesar de saberlo y de poder hacerlo, en ningún momento los recurridos presentaron un *hábeas corpus*. Como cuestión de hecho, los recurridos presentaron un *hábeas corpus* solicitando su excarcelación el **1 de agosto de 2018;** es decir, **luego de transcurridas tres (3) semanas de haber comenzado el Juicio.**

Cabe resaltar la importancia del elemento de la incertidumbre; el término máximo de seis (6) meses para una detención preventiva busca evitar que un acusado esté detenido preventivamente por tiempo ilimitado sin que se le celebre el Juicio. Este no era el caso de los recurridos. Cuando los recurridos presentaron sus respectivas solicitudes de *hábeas corpus* ya el Juicio en su contra había comenzado; por lo tanto, la detención preventiva había culminado. Asimismo, el mal que pretende evitar el término máximo de detención preventiva había dejado de existir. En fin, en estos casos, el recurso extraordinario de *hábeas corpus* es improcedente.

IV.

Por todo lo anteriormente expuesto, se revocan ambas Sentencias recurridas. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos consistentes con estos pronunciamientos.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Enoc Díaz Alicea<br><br>Recurrido<br><br>———————————<br><br>El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Kelvin Rivera Ortiz<br><br>Recurrido | CC-2018-0924<br><br>Cons. con<br><br>CC-2018-0928 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 15 de julio de 2020.

Por todo lo anteriormente expuesto, se revocan ambas Sentencias recurridas. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos consistentes con estos pronunciamientos.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez disienten con opinión escrita. El Juez Asociado señor Colón Pérez disiente y emite la siguiente expresión:

"El Juez Asociado señor Colón Pérez disiente del curso de acción seguido por una mayoría de este Tribunal en el día de hoy. Lo anterior, debido a que estar encarcelado un sólo día en exceso del término máximo de detención preventiva, dispuesto en el Art. II, Sec.11 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1,

contraviene las protecciones más básicas provistas por nuestra Carta Magna. Recordemos que la referida cláusula constitucional no hace distinción en cuanto al momento en que un acusado de delito debe levantar dicha defensa, por lo que, cumplido el término de seis (6) meses o ciento ochenta (180) días de detenerse preventivamente a una persona sin que se le haya celebrado el juicio, ésta debe ser puesta en libertad. Tal como expresó el delegado señor Arcilio Alvarado en las discusiones de la Convención Constituyente "[s]i llega a seis meses [y] un día, el hombre se va a la calle por un *hábeas corpus*". 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico 1595 (1961). Véanse, *Ortiz García v. Alcaide Institución Penal de Bayamón*, 2020 TSPR 16, 203 DPR _____ (2020) (Colón Pérez, voto particular disidente) y *Pueblo v. Aponte Ruperto*, 199 DPR 538 (2018) (Colón Pérez, opinión de conformidad)."

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Enoc Díaz Alicea<br><br>Recurrido<br><br>_____<br><br>El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Kelvin Rivera Ortiz<br><br>Recurrido | CC-2018-0924<br>Cons. con<br><br>CC-2018-0928 | *Certiorari* |

La Jueza Presidenta ORONOZ RODRIGUEZ emitió una Opinión disidente.

En San Juan, Puerto Rico, a 15 de julio de 2020.

El Artículo II, Sección 11 de nuestra Constitución expone de forma simple y sencilla que "[l]a detención preventiva antes del juicio no excederá de seis meses". Art. II, Sec. 11, Const. del ELA, LPRA, Tomo 1. Esta protección contra la detención preventiva en exceso de seis meses constituye un principio cardinal en nuestro sistema de derecho procesal penal y está anclado en derechos principalísimos como la dignidad humana, la libertad y la presunción de inocencia. Lamentablemente, con su determinación, la Mayoría del Tribunal vuelve a apartarse del

propósito fundamental que inspiró esta cláusula constitucional, menguando así la protección consagrada.

Un análisis detenido del texto y el espíritu de la disposición constitucional sobre la detención preventiva revela que el propósito de establecer un límite al tiempo que una persona puede estar detenida en prisión, sin que comience el juicio en su contra, es proteger a los ciudadanos de abusos de poder por parte del Estado. Por esta razón, una vez transcurre ese periodo de tiempo, la detención se torna ilegal y la persona puede solicitar su excarcelación en cualquier momento mediante la presentación de un recurso extraordinario de *habeas corpus*.[12]

En el caso que nos ocupa, no está en controversia que al momento en que se presentaron las solicitudes de *habeas corpus* había transcurrido el término de prisión preventiva de seis meses que fija la Sección 11 del Artículo II de la Constitución. Ese dato era suficiente para disponer de este caso, pues una vez el Estado se excede del término de detención preventiva lo que procede en derecho es que se conceda el auto de *habeas corpus*. Lo anterior, en aras de frenar una detención que se tornó ilegal. Para propósitos de este análisis, es impertinente si la solicitud se presentó luego de comenzado el juicio. La Constitución le impone una obligación y un límite de tiempo al Estado, no al acusado. Al añadir al texto de la Constitución un requisito que no

---

[12] El auto de *habeas corpus* es el mecanismo procesal para reclamar la excarcelación cuando una persona se encuentra detenida antes del juicio por más de seis meses. *Pueblo v. Ortiz,* 76 DPR 247, 249 (1954).

incluye, la Mayoría emprende en una interpretación errada de la salvaguarda constitucional y, como resultado, trastoca peligrosamente uno de los derechos más básicos que garantiza nuestro ordenamiento. Por ello, disiento.

I.

La Opinión expone adecuadamente los hechos del caso por lo que puntualizo solo los pertinentes. Luego de su arresto, los recurridos ingresaron a prisión el 10 de enero de 2018.[13] En ese momento comenzó a transcurrir el término de seis meses. Luego de varios trámites, el 17 de julio de 2018 comenzó el juicio en su fondo con el juramento del primer testigo.[14] Como vemos, entre el momento en que los recurridos ingresaron a prisión y comenzó el juicio pasaron más de seis meses.

De conformidad con la garantía constitucional que establece la Sección 11 del Artículo II de nuestra Constitución, los recurridos presentaron recursos de *habeas corpus* ante el Tribunal de Primera Instancia mediante los cuales solicitaron su excarcelación por violación al término de detención preventiva. No obstante, para la fecha en que los recurridos presentaron su solicitud, el juicio ya había comenzado.[15] De esa manera, quedó trabada la controversia que el Tribunal resuelve en su Opinión, a saber: si un imputado a quien el Estado detuvo preventivamente en exceso del término

---

[13] Opinión, pág. 2.
[14] Íd., pág. 4.
[15] Íd.

constitucionalmente permisible está impedido de reclamar su excarcelación si lo hace luego de que comience el juicio.

II.

La Mayoría del Tribunal resuelve que un acusado no puede solicitar su excarcelación por violación al término de detención preventiva una vez comenzó el juicio en su contra. Esto a pesar de que su detención sea ilegal porque excedió los seis meses sin que comenzara el juicio. Ese resultado choca con el texto claro de la cláusula constitucional sobre detención preventiva, la cual dispone expresamente que "la detención preventiva antes del juicio no excederá de seis meses". Art. II, Sec. 11, Const. del ELA, supra. Transcurrido el término de seis meses sin que haya comenzado el juicio, el encarcelamiento se convierte en ilegal. Ruiz v. Alcaide, 155 DPR 492, 503 (2001). Por lo tanto, lo único que impide la excarcelación del acusado es el comienzo del juicio dentro de los seis meses de la detención preventiva.[16]

La Mayoría desvirtúa el texto constitucional al requerirle al acusado que solicite su excarcelación antes de que comience el juicio, so pena de que su derecho a no estar detenido preventivamente en exceso de seis meses se entienda renunciado. El texto de la cláusula constitucional

---

[16] Es importante señalar que el derecho en controversia no es absoluto. Las instancias en que se ha reconocido limitaciones a este derecho son: (1) cuando se solicita que el imputado sea evalúe en cuanto a su procesabilidad, y (2) cuando el imputado impide el comienzo del juicio fraudulentamente. Véase Pueblo v. Pagán Medina, 178 DPR 228 (2010); Sánchez v. González, 78 DPR 849, 858 (1955) (Opinión particular del Juez Negrón Fernández). Véase también Pueblo v. Aponte Ruperto, 199 DPR 538, 553 (2018) (Opinión de conformidad de la Jueza Presidenta Oronoz Rodríguez).

no contempla ese requisito; al contrario, establece claramente que toda instancia de detención preventiva en Puerto Rico que exceda los seis meses es ilegal. Concluir, como la Mayoría, que la ilegalidad de la detención que la cláusula prohíbe se cura con meramente comenzar el juicio en una fecha posterior es forzar un resultado ajeno al texto claro de esta cláusula constitucional.

Por otro lado, la interpretación que realiza la Mayoría es incompatible con el propósito de esta cláusula. Es norma básica de interpretación que al evaluar una disposición legal es fundamental que el tribunal valide y adelante la intención por la cual esta se creó; es decir, se debe hacer efectivo el propósito del legislador y, en este caso, de los miembros de nuestra Asamblea Constituyente. En este ejercicio, los tribunales debemos usar principalmente la hermenéutica legal, pero también el sentido común.

Cuando examinamos el origen de esta protección es importante tener presentes las expresiones que hizo don Jaime Benítez, Presidente de la Comisión de Carta de Derechos de la Convención Constituyente. Benítez explicó que la adopción de una Carta de Derechos empleó dos postulados como punto de partida: la dignidad del ser humano y el principio complementario de la base política de consentimiento y voluntad popular. 2 Diario de Sesiones de la Convención Constituyente 1103-04 (1952). A base de esto, la Convención Constituyente incluyó en la Carta de Derechos la protección contra la detención preventiva.

Al debatir esta sección, los Constituyentes reconocieron que, más que atender la exigencia de rapidez en los juicios, esa protección evita el abuso de poder y asegura una mejor administración de la justicia. 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico, págs. 1594-1595 (1952). Fue el delegado Benítez quien propuso la enmienda a la propuesta de la Comisión de Carta de Derechos para intercalar la frase "antes del juicio". 3 Diario de Sesiones de la Convención Constituyente 1597 (1952). Durante el debate explicó que la intención era "dejar explícito el hecho de que la protección que aquí se quería establecer era la protección para la persona que aún no había sido juzgada y que sin haber sido juzgada [...] estaba por más de seis meses en la cárcel [...]" *Íd*. Específicamente, abundó:

> Esto lo que quiere decir es que en los casos donde no ha mediado juicio, una persona no puede estar detenida en la cárcel por más de seis meses. **Llega el día del último mes de los seis meses y entonces lo ponen en la calle** y eso no impide que se celebre juicio; pero se le celebra juicio ahora estando como si estuviera bajo fianza, sin estarlo. *Íd*. (énfasis nuestro)

Evidentemente, los artífices de nuestra Constitución estimaron que era impropio y contrario a los derechos fundamentales de la persona un período mayor de detención en espera de juicio como consecuencia de no haber prestado fianza. Lo anterior, particularmente en vista de que en esa etapa de los procesos aún no se ha determinado si la persona cometió un delito o no, por lo que se presume su inocencia.

Al interpretar esta disposición constitucional, este Tribunal ha dicho que esta tiene el propósito de que el Estado asegure la comparecencia del acusado al procedimiento judicial y, a su vez, evita que se le castigue excesivamente por un delito por el cual no ha sido juzgado. Pueblo v. Torres Rodríguez, 186 D.P.R. 183, 191 (2012); Pueblo v. Paonesa Arroyo, 173 DPR 203, 210, 211 (2008) Es decir, es una protección del individuo frente al poder del Estado. Por lo tanto, se debe interpretar de manera estricta y rigurosa. Pueblo v. Pagán Medina, 178 DPR 228, 252 (2010) (Opinión disidente de la Jueza Fiol Matta). También hemos señalado que el término máximo de seis meses de detención preventiva, por disposición constitucional, **transcurre contra el Ministerio Público**, quien tiene la obligación de iniciar con diligencia la celebración del juicio. *Ruiz v. Alcaide,* supra, pág. 503. Es decir, no hay duda de que ese término opera contra el Estado y "es tan y tan perentorio que si llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que ponerlo en la calle por un *habeas corpus* inmediatamente que hayan pasado los seis meses". Pueblo v. Paonesa Arroyo, 173 DPR 203, 211 (2008) (citando 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico 1595 (1961)). Incluso hemos manifestado que la protección constitucional contra la detención preventiva es un derecho irrenunciable. Véase Sánchez v. González, 78 DPR 849, 856 (1955). Hoy la Mayoría rechaza estos dictámenes, y exime al Estado de las

consecuencias de sus actos, a pesar de que incumplió con

un

término que le es oponible, y al resolver que el acusado

renuncia a su derecho si no lo aduce antes de que comience

el juicio.

En este caso, los recurridos estuvieron detenidos

preventivamente en la cárcel por más de seis meses sin que

se comenzara a celebrar el juicio en su contra. El hecho

de que presentaron la petición de *habeas corpus* luego de

que el juicio comenzó no borra el incumplimiento por parte

del Estado. Ello no impide que reclamaran su excarcelación

a base de una violación clara al término de detención

preventiva. Tal como expresé recientemente en mi voto

particular disidente en *Arnaldo Ortiz García v. Alcaide*,

2020 TSPR 16:

> [l]a postura más cónsona con el texto y espíritu
> de la Constitución es que la violación del término
> de detención preventiva produce una garantía
> inmediata de libertad para el acusado --es decir,
> un derecho automático a una libertad provisional
> sin fianza-- **independientemente de si el acusado
> lo reclama antes o después de comenzado el juicio.**
> (énfasis suplido)

Concluir lo contrario se aparta del camino original que

inspiró esta disposición constitucional. La interpretación

equivocada de este Tribunal choca con la función indelegable

del Poder Judicial de garantizar el derecho a la libertad y

la presunción de inocencia que asiste a todo acusado. La

consecuencia de esta determinación es preocupante. Implica

facilitar que el Estado castigue excesivamente por un delito

por el cual una persona no ha sido juzgada al obligarle a

permanecer encarcelado mientras se dilucida el juicio, aun cuando incumplió su obligación de comenzar el juicio en el término que establece nuestra Constitución. Ante esta desviación que menoscaba garantías constitucionales de alto valor en nuestro ordenamiento y en vista de todo lo anterior, no puedo estar de acuerdo con la opinión mayoritaria, por lo que disiento enérgicamente.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Enoc Díaz Alicea<br><br>    Recurrido<br><br><br>El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Kelvin Rivera Ortiz<br><br>  Recurrido | CC-2018-924<br>cons. con<br>CC-2018-928 | Certiorari |

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 15 de julio de 2020.

La Constitución de Puerto Rico tiene una protección para beneficio de la ciudadanía que consiste en la prohibición de detener preventivamente a un ser humano, que se presume inocente, por más de seis (6) meses. Esa garantía es consustancial a otros derechos individuales importantísimos en el proceso criminal, como lo son el debido proceso ley, la libertad y la presunción de inocencia. El texto constitucional es claro y la discusión del Diario de Sesiones de la Convención Constituyente constata, sin ambages, la auto ejecutabilidad de ese

derecho. Es una norma básica de derecho que una acción administrativa o legislativa que pretenda menoscabar esa norma sería inconstitucional. Hoy, lamentablemente, es el propio Poder Judicial el que pauta una norma que menoscaba ese derecho constitucional. Ello, al no reconocer que la cláusula de la detención preventiva se **activa** una vez se cumple el término de los seis (6) meses sin que inicie el juicio. Para la Mayoría, el inicio del juicio en una etapa posterior **desactiva** la protección constitucional. De este modo, se valida una ficción jurídica con el propósito de perpetuar el encarcelamiento de personas que no han sido declaradas culpables de los delitos que se le imputan. Además, avala la práctica del foro primario de continuar con la celebración del juicio cuando una controversia sobre una solicitud de habeas corpus ha sido expedida por un tribunal de mayor jerarquía.

Por estar en desacuerdo con las posturas asumidas tanto en la controversia procesal como en los méritos, disiento.

**I**

Sin adentrarnos en los hechos y los delitos por los que fueron encausados criminalmente, por no formar parte de la controversia en este caso, el 9 de enero de 2018, los jóvenes Kelvin Rivera Ortiz y Enoc Díaz Alicea (recurridos) fueron arrestados. Al siguiente día, fueron ingresados a una institución carcelaria por no prestar la fianza millonaria impuesta. Por tanto, les cobija el término de seis (6) meses

de detención preventiva que mandata la Sección 11 del Artículo II de la Constitución de Puerto Rico. Const. ELA, LPRA, Tomo 1.

A pesar del mandato constitucional expreso y el claro historial que enmarcó esta protección, bajo el prisma mayoritario, el Estado tenía hasta el **10 de julio de 2018** para iniciar el juicio de los recurridos.[17] De no cumplir con tal término, procedía su excarcelación.

Ahora bien, el juicio de los recurridos inició el **17 de julio de 2018**. Entiéndase, una vez vencido el término de seis (6) meses de detención preventiva. Es por ello que el 1 de agosto de 2018 ambos recurridos presentaron sus respectivas peticiones de habeas corpus.

Sin embargo, el Tribunal de Primera Instancia erróneamente denegó sus solicitudes de excarcelación. Basó su decisión en que el inicio del juicio desactivó la protección constitucional que nos ocupa. A raíz de ello, los recurridos acudieron al Tribunal de Apelaciones. Sostuvieron que el inicio

_____

[17]El derecho vigente pauta que el término de detención preventiva comienza desde que la persona es ingresada a una institución penal por no poder prestar la fianza requerida o desde su revocación. Ponce Ayala, Ex parte I, 179 DPR 18 (2010). Ahora bien, recientemente me uní al Voto particular disidente de la Jueza Presidenta Oronoz Rodríguez en el caso Arnaldo Ortiz García v. Alcaide Institución Penal de Bayamón, 2020 TSPR 16, en el que cataloga como errónea tal postura. Coincido en que el término de detención preventiva debe computarse desde el arresto y no así desde el ingreso a una cárcel por no prestar la fianza. Independientemente, en el caso de autos, el juicio comenzó vencido el término de los seis (6) meses ya fuera computado desde el arresto de los recurridos o desde el ingreso a la institución penal por no prestar la fianza.

del juicio no subsanó la violación al término de detención preventiva, por lo que procedía su inmediata excarcelación.

Tras evaluar ambos recursos a base del derecho aplicable, el Tribunal de Apelaciones expidió los correspondientes autos de <u>certiorari</u> y revocó la resolución del foro primario. De esta manera, mediante dos (2) sentencias independientes, el foro intermedio ordenó la excarcelación de los recurridos.[18]

En desacuerdo, la Oficina del Procurador General presentó los dos recursos que nos ocupan. En síntesis, planteó como error que el Tribunal de Apelaciones ordenara la excarcelación de los recurridos aun cuando éstos no reclamaron la violación a la detención preventiva antes del inicio del juicio, sino una vez comenzado.

El 25 de enero de 2019, ambos recursos fueron expedidos por este Tribunal y consolidados. Aun así, el Tribunal de Primera Instancia, sin mandato alguno, continuó con la celebración del juicio. Una vez finalizó el mismo, recayó un fallo de culpabilidad en alguno de los delitos y, como consecuencia, el foro primario dictó sentencia. De ésta, los recurridos acudieron al Tribunal de Apelaciones por medio de recursos de apelación. En tal etapa procesal, es que sorpresivamente advenimos en conocimiento del atropellado tracto acontecido. Ello, cuando la Oficina del Procurador General informó la acción en que incurrió el foro primario.

A tenor con lo anterior, tenemos dos controversias

_____

[18]Los recursos de <u>certiorari</u> fueron atendidos y resueltos por Paneles del Tribunal de Apelaciones distintos.

medulares, una en los méritos y la otra procesal. En los méritos, si procedía la excarcelación de los recurridos por la violación a la protección constitucional de la detención preventiva cuando la misma se invocó una vez iniciado el juicio. En el ámbito procesal, si el Tribunal de Primera Instancia debió continuar con la celebración del juicio, una vez este Tribunal expidió los recursos para atender la controversia de la detención preventiva en los méritos.

En ambas controversias, difiero de la postura asumida por la Mayoría. De entrada, la protección constitucional a la detención preventiva se **activa automáticamente** cuando se cumple el término de seis (6) meses en la cárcel sin haberse iniciado el juicio **a esa fecha.** El inicio del juicio con posterioridad a ese término no puede **desactivar** esa realidad constitucional. En el ámbito procesal, me parece desacertado interpretar que la expedición del recurso de certiorari por parte de este Máximo Foro no paralizó la celebración del juicio por parte del Tribunal de Primera Instancia.

A continuación, elaboro cada una de las controversias detenidamente y discuto a profundidad los fundamentos de mi disenso.

**II**

De entrada, me parece necesario comenzar con la discusión de la controversia procesal. Particularmente, la continuación del proceso judicial por parte del Tribunal de Primera Instancia, aun cuando la controversia del habeas corpus había

sido expedida por este Tribunal. Ello, contrario a las normas básicas de trámites apelativos. Este Tribunal ha sido enfático en la conveniencia del mandato y su razón de ser en los procesos apelativos. Hemos precisado que "[d]ebido a las importantes implicaciones de índole jurisdiccional que ello conlleva, los tribunales concernidos deben estar atentos al desarrollo del caso a nivel del tribunal revisor y a la etapa procesal en la que éste se encuentra, previo a retomar acción en el mismo". Colón y otros v. Frito Lays, 186 DPR 135, 150 (2012).

Como es sabido, el Reglamento del Tribunal Supremo dispone, en lo pertinente, que "[l]a expedición del auto [de certiorari], tanto en casos civiles como criminales, **suspenderá los procedimientos en el Tribunal de Apelaciones y el Tribunal de Primera Instancia**, salvo que el Tribunal disponga lo contrario. (Énfasis suplido). 4 LPRA Ap. XXI-B, R. 20(k). Así, la expedición del auto de certiorari suspende los procedimientos ante el Tribunal de Apelaciones y el Tribunal de Primera Instancia, salvo una orden en contrario emitida por el propio Tribunal Supremo. D. Rivé Rivera, Recursos Extraordinarios, 2da, San Juan, 1996, pág. 213.

Ahora bien, bajo la premisa de que el habeas corpus es un recurso extraordinario de naturaleza civil e independiente al proceso criminal, la Mayoría avala la actuación del foro primario de no paralizar los trámites ante su consideración. Lo anterior, bajo una mención somera del asunto, sin considerar las consecuencias jurídicas que acarrea para los protegidos constitucionalmente por la cláusula de detención preventiva.

A su vez, basándose en una resolución que no equivale a un precedente en derecho y que no conllevó un análisis de las implicaciones de tal postura. Me explico.

El habeas corpus es un recurso extraordinario de estirpe constitucional mediante el cual una persona privada de su libertad ilegalmente puede reclamar su liberación. Art. II, Sec. 13, Const. ELA, LPRA, Tomo 1. Tal es su envergadura que constitucionalmente sólo se reconoce su suspensión en situaciones extremas como "rebelión, insurrección o invasión". Íd. Este recurso tiene como propósito la protección de derechos fundamentales del acusado y la obtención para éste de un juicio imparcial, limpio y objetivo. Rabell v. Alcaides Cárceles de PR, 104 DPR 96, 98 (1975). Si un acusado es privado de algún derecho constitucional o estatutario y no existe otro remedio en ley para vindicar el derecho violado, procede la excarcelación del acusado a través del auto de habeas corpus. S. Amadeo, El habeas corpus en Puerto Rico, San Juan, 1948, págs. 75-76.

Particularmente, el Código de Enjuiciamiento Criminal establece que cualquier persona encarcelada o ilegalmente privada de su libertad puede solicitar un auto de habeas corpus a fin de que se investigue la causa de dicha privación. 34 LPRA sec. 1741(a). "A diferencia de los demás recursos extraordinarios, el juez no tiene discreción: si de la faz de la petición surgen alegaciones que revelan la ilegalidad de la custodia, tiene que expedir el auto". Rivé Rivera, op. cit., pág. 165.

El auto de habeas corpus puede ser utilizado en diversos escenarios en los que un ciudadano o ciudadana entienda ha sido privado o privada de su libertad ilegalmente. Lo cual pudiera darse en situaciones previas a un proceso judicial, en situaciones durante el proceso en sí o luego de concluido el proceso penal como lo sería post-sentencia. Por ello, aunque se trata de un recurso extraordinario de naturaleza civil, no podemos soslayar la imbricación que tiene con el proceso criminal. Precisamente, cuando el argumento del habeas corpus está basado en la violación de un término o trámite directamente relacionado con el proceso judicial, como lo sería en el caso de autos con la violación al término de detención preventiva. Así lo expresa la Prof. Dora Nevares:

> El habeas corpus es el remedio adecuado para invocar la disposición constitucional que dispone que nadie podrá estar recluido en detención preventiva en exceso de seis meses sin celebrársele el juicio. (Art. II, Sec. 11). Se utiliza este recurso ya que al cabo de los seis meses la detención se convierte en ilegal. D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, 10ma ed., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2014, pág. 260.

Como tal, no resulta acertado razonar que, a modo general, el auto de habeas corpus es un asunto independiente y ajeno al proceso criminal. Tal interpretación no puede tener cabida en el asunto ante nuestra consideración. La violación a la detención preventiva está intrínsicamente entrelazada con el transcurso del proceso penal, específicamente con la celebración del juicio. Ello, pues precisamente tal protección

constitucional se activa al no iniciarse oportunamente el juicio. Además, de estar estrechamente ligada a otros derechos constitucionales relacionados al proceso criminal como lo serían el debido proceso de ley y la presunción de inocencia.

Aun cuando ha sido catalogado como un recurso extraordinario de naturaleza civil, el habeas corpus, como medio para reclamar la violación de detención preventiva, incide directamente con la celebración del juicio.[19] Si bien se ha dicho que es de naturaleza civil, a fin de cuentas, se dirige a determinar la legalidad de la privación de la libertad, cuando ha tenido su origen en una convicción criminal. Capeles v. Jefe Penitenciaría, 83 DPR 694, 700 (1961). Es por ello que el verdadero remedio es atenderlo dentro del mismo contexto del caso criminal para proteger otras garantías como lo son la presunción de inocencia y el debido proceso de ley. Precisamente, en el caso de autos, el recurso de habeas corpus fue presentado en la misma sala criminal donde se celebraba el juicio y fue resuelto por la misma jueza. Hoy, mediante una ficción jurídica, una Mayoría produce una bifurcación que no ocurrió en la realidad.

Básicamente, la decisión de la Mayoría para avalar la continuación del juicio aun cuando existía un recurso de

---

[19] El Prof. Rivé Rivera critica tal clasificación al expresar lo siguiente: "Como en la nomenclatura jurídica todavía se insiste en catalogar al hábeas corpus como un proceso de naturaleza civil, no se le extienden al peticionario las garantías procesales que lo cobijarían en un procedimiento de naturaleza penal". D. Rivé Rivera, Recursos Extraordinarios, 2da, San Juan, 1996, pág. 164.

certiorari expedido relacionado con el mismo proceso penal, está basada en una resolución emitida en el caso de Pueblo v. Pagán Medina, 177 DPR 842 (2010). Allí, en referencia a la naturaleza civil del habeas corpus, se expresó sin más que el proceso penal podía seguir su curso. Ello, sin considerar las consecuencias jurídicas, los derechos involucrados y obviando que el recurso expedido por este Tribunal no autorizó la continuación de los procedimientos ante el Tribunal de Primera Instancia.

La Mayoría sabía, al momento de expedir este recurso, que, una vez la controversia de detención preventiva llega a un foro apelativo mediante un recurso de habeas corpus, la prudencia jurídica debe llevar a que los procedimientos judiciales en el foro de instancia se suspendan. Así quedó establecido en la resolución de expedición del auto de certiorari. De lo contrario, el reclamante del habeas corpus se podría quedar sin un remedio real. Mediante la ficción pautada hoy, se ignora esta realidad procesal, lo que desemboca precisamente a validar, como en el caso de autos, que el juicio haya finalizado sin que la controversia de la excarcelación fuese oportunamente resuelta.

Avalar que el proceso judicial continúe su marcha con un reclamo de excarcelación por detención preventiva, equivale a que ese reclamante estará impedido de tener un **remedio completo, adecuado y sobre todo oportuno**. En consecuencia, el reclamante no tendría un remedio real y práctico, sólo teórico. Como sucede en el caso de autos, que, en efecto, a los

recurridos se les violó el término de la detención preventiva y no podrán recibir el remedio adecuado que oportunamente reclamaron. A su vez, con las consecuencias que ello acarrea en otros derechos constitucionales como el debido proceso de ley, la adecuada preparación de la defensa y en la presunción de inocencia.

Ciertamente, el término de detención preventiva tiene como norte acelerar el inicio del juicio de una persona encarcelada a la cual le cobija una presunción de inocencia. Es decir, evitar la encarcelación excesiva a quien no se la ha probado delito alguno. Sin embargo, al existir un mandato constitucional de que los recursos de habeas corpus se atiendan con **rapidez**, es completamente armonizable el reclamo de la parte recurrida. Art. II, Sec. 13, Const. ELA, LPRA, Tomo 1. Es decir, va de la mano con los postulados que pretenden agilizar los trámites judiciales criminales, incluida la celebración del juicio, sin atropellar en el camino garantías individuales. El curso de acción descartado por la Mayoría hubiese evitado precisamente lo que ocurrió en el caso de autos, donde la dilación en resolver la controversia de la detención preventiva en los méritos conllevó a que el juicio se celebrara en su totalidad sin el beneficio de que fuera resuelta oportunamente. Como tal, este tipo de planteamiento jurídico requiere la mayor celeridad posible de los tribunales para atender la misma. De esta manera, no pondríamos en riesgo esta protección constitucional como sucedió en el caso de autos.

A tenor con todo lo antes discutido, sostengo que no resulta una práctica sana y conveniente el conceptualizar de una manera general los recursos de habeas corpus como procesos separados y ajenos al proceso criminal. Es por ello que entiendo prudente que, ante controversias como la de autos, el foro primario se abstenga de continuar con el proceso judicial mientras se resuelve prontamente la controversia de la excarcelación en los méritos. Así, promovemos que los reclamantes puedan tener un remedio oportuno y, sobre todo, real. Como mencioné, por mandato constitucional, los autos de habeas corpus deben resolverse rápidamente. De este modo, se armonizan los preceptos constitucionales y estatutarios que promueven el juicio rápido. Los tribunales tenemos que acatar tal mandato y atender las controversias de habeas corpus con la celeridad que la controversia amerita.[20]

## III

## A.

Una vez discutido el ámbito procesal y las razones por las que sostengo que el Tribunal de Primera Instancia no debió continuar la celebración del juicio hasta recibir nuestro mandato relacionado con el habeas corpus, procedo a discutir el asunto de la detención preventiva en los méritos. Aquí no

_____

[20]Nótese la postura adoptada por la Mayoría en cuanto al asunto de la academicidad. En tiempos recientes, han rehusado reconocer las excepciones a la doctrina de academicidad aun cuando han estado presentes los elementos necesarios y derechos constitucionales bajo reclamos de similar naturaleza. Véase, Pueblo v. Jorge Moreu, 201 DPR 799 (2019). Sin embargo, hoy sí entienden que aplican tales excepciones para innecesaria e injustificadamente pautar un golpe mortal a una protección constitucional.

está en controversia y no existe duda alguna que a los recurridos se les violó el término de detención preventiva. Ello, pues el juicio inició una vez vencido el término de seis (6) meses pautado en la Constitución de Puerto Rico. La controversia es si el inicio del juicio, una vez transcurrido ese término, desactiva esa protección constitucional.

En mi Opinión de Conformidad en el caso de Pueblo v. Aponte Ruperto, 199 DPR 538 (2018), expliqué que el término de detención preventiva es uno fatal, de caducidad, no prorrogable. Por lo tanto, no permite interrupción por justa causa, distinto a lo que serían los términos de juicio rápido.

En esta ocasión, consecuentemente, me reafirmo en lo anterior y añado que, una vez vencido el término de seis (6) meses en la cárcel sin haberse iniciado el juicio, **automáticamente se activa la protección constitucional y la persona tiene derecho a ser excarcelada.**

La Constitución de Puerto Rico prohíbe expresamente la detención preventiva más allá del término de seis (6) meses. Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. Específicamente, se refiere al período anterior al juicio, en el cual el acusado se encuentra privado de su libertad en una cárcel y en espera de que se le celebre el correspondiente proceso criminal. Pueblo v. Méndez Pérez, 193 DPR 781, 787 (2015); Pueblo v. Pagán Medina II, 178 DPR 228, 236 (2010); Ruiz v. Alcaide, 155 DPR 492, 502 (2001).

Esta protección constitucional está entrelazada con otros derechos constitucionales como lo son el derecho a la vida, a la libertad, al debido proceso de ley y a la presunción de

inocencia. Precisamente, porque evita que se castigue excesivamente por un delito por el cual no se ha juzgado. Pueblo v. Pagán Medina II, supra; Ruiz v. Alcaide, supra.

Esta cláusula constitucional es clara y directa al precisar que nadie puede estar encarcelado preventivamente en exceso del término de seis (6) meses. Así lo demuestra la discusión del Diario de Sesiones de la Convención Constituyente de Puerto Rico:

> Sr. ALVARADO: [...] Este término que estamos fijando es tan y tan perentorio que si llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que ponerlo en la calle por un hábeas corpus inmediatamente que hayan pasado los seis meses. […]
>
> Sr. ALVARADO: Antes del juicio, antes de someterse a juicio. No es que tiene, es que no puede pasar de los 6 meses. Si llega a seis meses un día, el hombre se va a la calle por un hábeas corpus. Puede ser a los dos meses, puede ser a los dos días, puede ser a los tres días, **pero no puede ser después de seis meses.**
>
> Sr. RIVERA COL[Ó]N: ¿No puede ser después de seis meses?
>
> Sr. ALVARADO: Dentro de los seis meses hay que celebrar el juicio. **Si no se celebra el juicio dentro de los seis meses, el hombre va para la calle.** [...] El término de seis meses es prudente, es razonable, corresponde a la legislación actual y podría funcionarse con él. [...]. (Énfasis suplido). Diario de Sesiones de la Convención Constituyente de Puerto Rico, 1595 (1961).

Lo anterior demuestra fehacientemente que el término de seis (6) meses es perentorio. Así, una vez el mismo vence,

procede la excarcelación. Los responsables de su aprobación razonaron que el juicio tiene que iniciarse antes de que venza el término constitucional, de lo contrario, lo que procede es que el acusado o acusada enfrente el juicio en la libre comunidad.

La consecuencia del transcurso del mencionado término es que se puede lograr la excarcelación del acusado mediante la presentación de un recurso de habeas corpus, fundamentado en la ilegalidad de su detención preventiva. Ruiz v. Alcaide, supra. Ello, pues transcurrido el referido término sin que se celebre el juicio, la detención preventiva es ilegal. Íd.

Irrespectivamente de la causa por la cual no se haya podido celebrar el juicio, el acusado se hace acreedor a su excarcelación al transcurrir el término de seis (6) meses desde su detención. D. Rivé Rivera, op. cit., pág. 147. Por ello, el efecto del transcurso del término limitativo de seis (6) meses de la detención preventiva, a diferencia del transcurso de los términos de juicio rápido, es la excarcelación inmediata del imputado. Pueblo v. Valdés et al., 155 DPR 781, 790-791 n.7 (2001). De este modo, la renuncia del imputado a su derecho a juicio rápido no supone una renuncia al término máximo de detención preventiva. Íd.; Sánchez v. González, 78 DPR 849 (1955). Particularmente, cuando la protección constitucional a la detención preventiva **no es renunciable**. Íd.

En cuanto a la controversia que nos concierne, en Pueblo v. Paonesa Arroyo, 173 DPR 203, 212 (2008), resolvimos

expresamente que era "suficiente el 'inicio' del juicio— **antes de que se cumplan los seis meses de prisión preventiva**— para evitar la excarcelación del acusado al amparo de la cláusula de detención preventiva". (Énfasis suplido). **Una vez transcurren seis (6) meses desde la detención del acusado sin que el acusado sea sometido al juicio correspondiente, éste tiene derecho a ser excarcelado** y permanecer en libertad por el resto del tiempo que duren los procedimientos en su contra. Íd., pág. 211.

**B.**

La protección constitucional relacionada a la detención preventiva no es un capricho de los constituyentes, mucho menos de la ciudadanía y tampoco de los disidentes. Esta protección constitucional tiene un marco legal que va más allá del derecho constitucional y se extiende a las nociones básicas de derechos humanos, reconocida expresamente en el Derecho Internacional. Veamos.

La Mayoría parte de una premisa errónea que le da muerte a la plenitud de efectos de la cláusula de detención preventiva. Ello, consiste en la visión limitada que presuntamente la cláusula de detención preventiva solamente se activa para obligar al Estado a que comience el juicio y se desactiva cuando inicia el mismo. Bajo nuestro ordenamiento constitucional, hemos reconocido otros efectos protectores ligados a esa cláusula que dan vida a derechos contenidos en nuestra Carta de Derechos, los cuales hoy lamentablemente se

ignoran por este Tribunal. Ello, a pesar de que no solamente el historial de la Asamblea Constituyente lo comprueba, sino también los documentos que sirvieron de base para instituir a nivel constitucional la cláusula de detención preventiva y el eventual desarrollo interpretativo de los derechos humanos.

Como bien explica el Dr. Jorge Farinacci Fernós y Gabriela Rivera Vega:

> Cuando Puerto Rico comenzó a redactar su primera Constitución, contó con la ventaja de poder recurrir a múltiples fuentes internacionales y comparadas como inspiración y guía. No escribimos nuestro texto constitucional a ciegas.

> En términos generales, la fuente internacional que más influyó nuestro texto constitucional fue la Declaración Americana de Derechos y Deberes del Hombre de 1948. Esto se puede apreciar en las semejanzas textuales y estructurales entre esa Declaración y la Carta de Derechos de la Constitución de Puerto Rico. Ahora bien, la Declaración Universal de Derechos Humanos también cumplió un rol vital en la redacción de nuestra Carta de Derechos. Por tanto, en términos generales, debe recurrirse a ambas declaraciones, como parte de un ejercicio hermenéutico, para dar contenido y contexto a nuestra Carta de Derechos. En caso de discrepancias, en términos generales, debe prevalecer la Declaración Americana, a menos que, como veremos, se trate de alguna disposición particular en donde la Declaración Universal tuvo una influencia mayor.

> Como vimos previamente, de la Declaración Universal de los Derechos Humanos surgieron el Pacto Internacional de Derechos Civiles y Políticos y el Pacto Internacional de Derechos Sociales, Económicos y Culturales.

> En términos de pura hermenéutica, los tribunales puertorriqueños deben tomar en consideración ambos instrumentos al abordar las disposiciones de nuestra Carta de Derechos que se inspiraron en la Declaración Universal. Recordemos que, a diferencia de los EEUU, y similar a otras constituciones estatales y territoriales, la Constitución de Puerto Rico sí hace referencia a un sinnúmero de derechos sociales, económicos y

culturales, por lo cual el Pacto Internacional de Derechos Sociales, Económicos y Culturales es altamente relevante. J. Farinacci Fernós y G. Rivera Vega, El uso de fuentes transnacionales en el derecho puertorriqueño (Parte I), 51 Rev. Jur. UIPR 189, 204-205 (2016).

Con ello en mente, adviértase que esa normativa internacional ha reconocido consecuentemente que el principio de la presunción de inocencia es el punto de partida para cualquier análisis de los derechos y el tratamiento otorgado a las personas que se encuentran bajo prisión preventiva. La presunción de inocencia está expresamente reconocida sin salvedad ni excepción alguna por diversos instrumentos internacionales de derechos humanos. Véase: Artículo 11.1 de la Declaración Universal de Derechos Humanos, Artículo 14.2 del Pacto Internacional de Derechos Civiles y Políticos, Artículo XXVI de la Declaración Americana de los Derechos y Deberes del Hombre y Artículo 8.2 de la Convención Americana sobre Derechos Humanos. Véase, además, Informe sobre el uso de la prisión preventiva en las Américas, Comisión Interamericana de Derechos Humanos, 30 de diciembre de 2013 (OEA/Ser.L/V/II. Doc 46/13).

El Informe sobre el uso de la prisión preventiva en las Américas, supra, expone magistralmente la interacción entre la necesidad de respetar cabalmente los límites de la detención preventiva, no meramente para garantizar que inicie un juicio, sino para que no se conviertan en ficción garantías constitucionales adicionales concretas. Como bien expone ese foro:

Esa presunción de inocencia es la que ha llevado al derecho penal moderno a imponer como regla general, que toda persona sometida a proceso penal debe ser juzgada en libertad y que es sólo por vía de excepción que se puede privar al procesado de la libertad (principio de excepcionalidad). En caso de resultar necesaria la detención del acusado durante el transcurso de un proceso, su posición jurídica sigue siendo la de un inocente. Por eso, y como se reitera consistentemente en este informe, el derecho a la presunción de inocencia es el punto de partida de cualquier análisis de los derechos y el tratamiento otorgado a las personas que se encuentran en prisión preventiva. […]

En los hechos, la observancia del derecho a la presunción de inocencia implica, en primer lugar, que como regla general el imputado debe afrontar el proceso penal en libertad. Lo que supone que la prisión preventiva sea utilizada realmente como una medida excepcional; y que en todos aquellos casos en los que se disponga su aplicación, se tenga el derecho a la presunción de inocencia al establecerse las razones legítimas que pudiesen justificarla. Como toda limitación a los derechos humanos, la privación de la libertad previa a una sentencia, deber ser interpretada restrictivamente en virtud del principio pro homine, según el cual, cuando se trata del reconocimiento de derechos debe seguirse la interpretación más beneficiosa para la persona, y cuando se trata de la restricción o supresión de los mismos, la interpretación más restrictiva. Íd. (Citas omitidas).

Asimismo, se reconoce que la detención preventiva es una medida cautelar, no punitiva. "De ahí la importancia del criterio de razonabilidad, pues mantener privada de libertad a una persona más allá del tiempo razonable para el cumplimiento de los fines que justifican su detención equivaldría, en los hechos a una pena anticipada". Íd. Mas aun, el prolongar tal detención preventiva aumenta el riesgo de que la presunción de inocencia se convierta en una mera burla. Íd.

La Organización de las Naciones Unidas también ha advertido las implicaciones de las protecciones contra la detención preventiva prolongada e irrazonable con fundamentos que van más allá de la necesidad de que se inicie prontamente un juicio. Ello, al advertir que la propia detención preventiva socava la posibilidad de un juicio justo y la presunción de inocencia. De igual forma, incrementa el riesgo de que se extraiga una confesión o una declaración por medio de la tortura o malos tratos y debilita las posibilidades de defensa de los imputados, principalmente cuando éstos son pobres. Véase, Informe del Comité contra la tortura, 2012-2013 (A/68/44).

Como puede apreciarse, la acción adoptada por una Mayoría de este Tribunal no solo choca con el texto constitucional y nuestro desarrollo interpretativo constitucional, sino que también es totalmente contrario a la normativa internacional que inspiró la cláusula de detención preventiva.

### c.

A base del Derecho antes resumido y aplicable a los hechos ante nuestra consideración, resulta imperativo reconocer que los recurridos podían válidamente solicitar su excarcelación, pues su protección constitucional sobre la detención preventiva fue vulnerada. El hecho de que el juicio comenzó no desactiva la protección constitucional y mucho menos por ficción borra que fue una vez vencido el término de seis (6) meses que exige la Constitución. No podemos obviar que este

mandato constitucional busca proteger, sin ambages, a las personas encarceladas de un castigo excesivo previo a ser debidamente juzgados y las implicaciones que tiene tal encarcelación sobre otros derechos de los acusados.

Según antes reseñado, este mandato constitucional es irrenunciable y se activa por el mero pasar del tiempo. Una vez se cumple el término de seis (6) en prisión sin iniciarse el juicio, se activa la protección constitucional y la persona tiene que ser excarcelada. En consecuencia, tiene el derecho de estar en la libre comunidad durante la celebración del juicio.

Mas allá de la incertidumbre de cuándo comenzará el juicio, como suscribe la Mayoría, la detención preventiva lo que pretende evitar es que una persona sea excesivamente privada de su libertad sin el debido proceso de ley. Conforme a ello, se estableció como término fatal el plazo de seis (6) meses para que el Estado inicie el juicio. Una vez vencido el mismo, sin que el juicio inicie, se activa la protección constitucional aquí en discusión y procede la excarcelación.

De otra parte, me parece desconcertante que este Máximo Foro no valide esta protección constitucional en referencia a una alegada "estrategia" de la representación legal. Así, justifican la norma pautada erróneamente en el hecho de que **los abogados** de los recurridos no solicitaron la excarcelación de sus clientes previo al inicio del juicio. Acoger esta interpretación de la Mayoría implica que un ciudadano pierda

una protección constitucional por el mero hecho que su abogado o abogada levantó el reclamo una vez ya concretada la violación al derecho constitucional. Con ese afán desacertado, la Mayoría pierde de perspectiva que una protección constitucional fue activada y que los clientes son los que tienen derecho a ser excarcelados.

En resumen, no puedo validar la visión que suscribe la Mayoría, en cuanto deja a un lado esta protección constitucional bajo la ficción de que el inicio del juicio la desactiva. **Ello, aun cuando en efecto reconocen que venció el término fijado en la Constitución para el inicio del juicio.** La interpretación de la Mayoría menoscaba esta protección constitucional. Particularmente, una protección ligada al derecho de la libertad y a la presunción de inocencia. Lo que hoy resuelve la Mayoría equivale a invalidar el término de detención preventiva establecido expresamente en la Constitución de Puerto Rico. En fin, mediante una ficción jurídica, se intenta solapar la innegable realidad de que "prisión es prisión". Expresión disidente del Juez Asociado señor Estrella Martínez en Arnaldo Ortiz García v. Alcaide Institución Penal de Bayamón, 2020 TSPR 16.

El Foro Judicial que se supone tenga como meta proteger los derechos constitucionales de los ciudadanos y ciudadanas, hoy de un plumazo limita irrazonablemente uno de esos derechos al adoptar un análisis contrario a su texto y razón de ser. En fin, hoy se valida la detención ilegal de personas que, sin ser debidamente juzgadas, tienen que verse privadas de su

libertad por un término considerado en la propia Constitución como excesivo.

**IV**

Por las razones expuestas, disiento del dictamen emitido por la Mayoría de este Tribunal.


Luis F. Estrella Martínez
Juez Asociado